IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE: LUMBER LIQUIDATORS CHINESE-MANUFACTURED FLOORING PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. l:15-md-02627 (AJT/TRJ) |
| This Document Relates to ALL Cases | |

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS FIRST AMENDED
REPRESENTATIVE CLASS ACTION COMPLAINT AND TO STRIKE
REQUEST FOR INJUNCTIVE RELIEF CLASSES**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...........................................................................................................1

II.    STATEMENT OF FACTS ...........................................................................................2

       A.     Plaintiffs Allege that MDF Cores in Defendant's Flooring Emitted Formaldehyde at Levels Far Above California's Limits and Emission Levels of Competitors' Products ...........................................................................2

       B.     Plaintiffs Allege that Defendant Knew and Hid the Fact that Its Products Contained High Levels of Formaldehyde ..................................................3

       C.     The Complaint Alleges that Lumber Liquidators Misrepresented the Safety of its Products and the Subsequent Danger to its Customers ......................4

             1.     Lumber Liquidators misrepresented the safety of its products. ...................4

             2.     Lumber Liquidators continues to misrepresent the health risks its products pose to customers. ............................................................................5

       D.     Plaintiffs Bring Claims Under Their Respective States' Laws...............................6

III.    LEGAL STANDARD....................................................................................................7

IV.    ARGUMENT .................................................................................................................8

       A.     Defendant Violated the ATCM by Selling Products Containing MDF Cores that Exceeded Formaldehyde Emission Limits ............................................8

             1.     The ATCM applies to Lumber Liquidators' sale of formaldehyde-contaminated laminate wood flooring. ........................................................9

             2.     Lumber Liquidators' ATCM arguments misread the Regulation..............11

                    a.     The ATCM prohibits retailers from selling finished goods that contain non-compliant MDF cores. ........................................11

                    b.     There is no "safe harbor" for retailers who sell non-compliant goods and no requirement to show that Defendant knew of violations. .......................................................12

                    c.     Defendant's claim that CARB itself must perform the test ignores the compliance testing provision.......................................13

       B.     Defendant Misrepresented and Omitted Material Facts, Injuring Plaintiffs..........15

- i -

1.      Plaintiffs have standing to base claims on Defendant's misrepresentations............................................................................15

2.      The alleged truth of the representations is disputed and would not preclude state consumer protection law claims. ........................................15

3.      Defendant omitted material facts. .............................................................16

C.      Defendant's Actions Violated State Consumer Fraud Statutes ............................17

1.      The California Plaintiffs pled violations of California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act. .........................................................................................17

2.      The Brandts sufficiently alleged a violation of the Florida Deceptive and Unfair Trade Practices Act.................................................20

3.      The Cloudens allege a sufficient claim under GBL § 349........................21

4.      Defendant violated the Texas Deceptive Trade Practices Act..................22

5.      Defendant violated the Illinois Consumer Fraud Act. .............................23

D.      Plaintiffs Properly Pled Fraudulent Concealment and Negligent Misrepresentation.............................................................................................24

E.      Plaintiffs Sufficiently Pled an Implied Warranty Claim.......................................26

F.      Defendant Violated the Magnuson-Moss Warranty Act .......................................27

G.      Lumber Liquidators' Indoor Air Testing Program is Causing Injury to Class Members and Injunctive Relief is Appropriate under Rule 23(b)(2)...........29

H.      Declaratory Relief is Warranted ..........................................................................30

V.      CONCLUSION..................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Bain*,
    697 F.2d 1213 (4th Cir. 1982) ................................................................15

*Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*,
    929 F. Supp. 2d 502 (D. Md. 2013) ..........................................................7

*Asghari v. Volkswagen Grp. of Am., Inc.*,
    42 F. Supp. 3d 1306 (C.D. Cal. 2013) ...............................................19, 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................7

*Benjamin v. CitiMortgage, Inc.*,
    2013 WL 1891284 (S.D. Fla. May 6, 2013) ........................................8, 17

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ...................................................................27

*Buckland v. Threshold Enters., Ltd.*,
    155 Cal. App. 4th 798 (2007) ..................................................................20

*Burns v. Winnebago Indus., Inc.*,
    2013 WL 4437246 (M.D. Fla., Aug. 16, 2013) ......................................25

*In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*,
    2015 WL 4591236 (D.N.J. July 29, 2015)..............................................26

*Cel–Tech Commc'n, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) .............................................................................17

*Chavis v. Fid. Warranty Servs., Inc.*,
    415 F. Supp. 2d 620 (D.S.C. 2006).........................................................27

*Chern v. Bank of Am.*,
    15 Cal. 3d 866 (1976) ..............................................................................20

*Colgan v. Leatherman Tool Grp.*,
    135 Cal. App. 4th 663 (2006) ..................................................................18

*Connick v. Suzuki Motor Co.*,
    675 N.E.2d 584 (Ill. 1996) .................................................................8, 17

*Craftmatic Sec. Litig. v. Kraftsow*,
   890 F.2d 628 (3d Cir. 1989)................................................................................7

*De Bouse v. Bayer AG*,
   922 N.E.2d 309 (Ill. 2009) ...............................................................................23

*Dodson v. Tempur-Sealy Int'l, Inc.*,
   2014 WL 1493676 (N.D. Cal. Apr. 16, 2014) ...................................................19

*Ebin v. Kangadis Food Inc.*,
   2014 WL 737960 (S.D.N.Y Feb. 25, 2014)........................................................15

*Elkind v. Revlon Consumer Prods. Corp.*,
   2015 WL 2344134 (E.D.N.Y. May 14, 2015) ....................................................25

*Exim Brickell LLC v. PDVSA Servs. Inc.*,
   516 F. App'x 742 (11th Cir. 2013) ....................................................................26

*Formosa Plastic Corp. USA v. Presidio Eng'rs & Contractors*,
   960 S.W.2d 41 (Tex. 1998)................................................................................25

*Galitskie v. Samsung Telecomms. Am., LLC*,
   2013 WL 6330645 (N.D. Tex. Dec. 5, 2013) .....................................................28

*Gantt v. Clemson Agricultural College*,
   320 F.2d 611 (4th Cir. 1963) ............................................................................29

*Gov't of Guam v. Kim*,
   2015 WL 1956531 (Guam Apr. 28, 2015)..........................................................25

*Hauter v. Zogarts*,
   534 P.2d 377 (Cal. 1975) ..................................................................................26

*Herron v. Best Buy Co. Inc.*,
   924 F. Supp. 2d 1161 (E.D. Cal. 2013).........................................................17, 18

*Hill v. Hoover Co.*,
   899 F. Supp. 2d 1259 (N.D. Fla. 2012)..............................................................28

*Hoffman v. AmericaHomeKey, Inc.*,
   23 F. Supp. 3d 734 (N.D. Tex. 2014) .................................................................17

*Horton v. Woodman Labs, Inc.*,
   2014 WL 1329355 (M.D. Fla. Apr. 2, 2014) ......................................................26

*Hubbard v. Gen. Motors Corp.*,
   1996 WL 274018 (S.D.N.Y. May 22, 1996) .......................................................27

*Jordan v. Paul Fin., LLC,*
  285 F.R.D. 435 (N.D. Cal. 2012) ........................................................................16

*Kasky v. Nike, Inc.,*
  27 Cal. 4th 939 (2002) ...............................................................................14, 18

*Khoday v. Symantec Corp.,*
  2014 WL 1281600 (D. Minn. Mar. 31, 2014) ......................................................16

*Maldonado v. Creative Woodworking Concepts, Inc.,*
  694 N.E.2d 1021 (Ill. Ct. App. 1998) .................................................................27

*Marsikian v. Mercedes Benz USA, LLC,*
  2009 WL 8379784 (C.D. Cal. May 4, 2009) ........................................................24

*Mazza v. Am. Honda Motors Corp.,*
  666 F.3d 581 (9th Cir. 2012) ............................................................................18

*Moorman Mfg. Co. v. Nat'l Tank Co.,*
  91 Ill.2d 69 (1982) .........................................................................................24

*Morgan v. AT&T Wireless Servs., Inc.,*
  177 Cal. App. 4th 1235 (2009) .........................................................................16

*Moss v. Lane Co.,*
  471 F.2d 853 (4th Cir. 1973) ............................................................................29

*Mui Ho v. Toyota Motor Corp.,*
  931 F. Supp. 2d 987 (N.D. Cal. 2013) ................................................................17

*Murphy v. Mallard Coach Co.,*
  582 N.Y.S.2d 528 (N.Y. App. Div. 1992) ............................................................28

*In re MyFord Touch Consumer Litig.,*
  46 F. Supp. 3d 936 (N.D. Cal. 2014) .................................................................25

*Native Am. Arts, Inc. v. Bundy-Howard, Inc.,*
  2002 WL 1488861 (N.D. Ill. July 11, 2002) ........................................................26

*Negrete v. Allianz Life Ins. Co. of N. Am.,*
  287 F.R.D. 590 (C.D. Cal. 2012) .......................................................................15

*Neri v. R.J. Reynolds Tobacco Co.,*
  2000 WL 33911224 (N.D.N.Y. Sept. 28, 2000) ....................................................26

*Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
  647 N.E.2d 741 (N.Y. 1995) .............................................................................17

*Parenteau v. Gen. Motors, LLC*,
    2015 WL 1020499 (C.D. Cal. Mar. 5, 2015) ........................................................17

*Parkway Co. v. Woodruff*,
    901 S.W.2d 434 (Tex. 1995) ...........................................................................22, 23

*Paulus v. Bob Lynch Ford, Inc.*,
    139 Cal. App. 4th 659 (2006) .................................................................................18

*Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2d Cir. 2005) .....................................................................................8

*Phillips v. LCI Int'l, Inc.*,
    190 F.3d 609 (4th Cir. 1999) ....................................................................................6

*In Re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*,
    880 F. Supp. 2d 801 (S.D. Ohio 2012) ...................................................................29

*Rackley v. Bd. of Trustees of Orangeburg Reg'l Hosp.*,
    238 F. Supp. 512 (D.S.C. 1965) ..............................................................................29

*Randall v. United States*,
    30 F.3d 518 (4th Cir.1994) .......................................................................................7

*Rikos v. Procter & Gamble Co.*,
    2015 WL 4978712 (6th Cir. Aug. 20, 2015) .....................................................20, 23

*Robinson Helicopter Co. v. Dana Corp.*,
    102 P.3d 268 (Cal. 2004) ........................................................................................24

*Royal Typewriter Co. v. Xerographic Supplies Corp.*,
    719 F.2d 1092 (11th Cir. 1983) ..............................................................................27

*Schimmer v. Jaguar Cars, Inc.*,
    384 F.3d 402 (7th Cir. 2004) ..................................................................................27

*Schuster Equip. Co. v. Design Elec. Servs., Inc.*,
    554 N.E.2d 1097 (1990) ..........................................................................................25

*Shahinian v. Kimberly-Clark Corp.*,
    2015 WL 4264638 (C.D. Cal. July 10, 2015) ...................................................29, 30

*Siever v. BWGaskets, Inc.*,
    669 F. Supp. 2d 1286 (M.D. Fla. 2009) ..................................................................20

*Small v. Lorillard Tobacco Co., Inc.*,
    720 N.E.2d 892 (1999) ............................................................................................22

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009)............................................................................21

*Stella v. LVMH Perfumes & Cosmetics USA, Inc.*,
    564 F. Supp. 2d 833 (N.D. Ill. 2008) ..........................................................26

*Stop Youth Addiction, Inc.*,
    17 Cal. 4th 553, 579 (1998) ........................................................................14

*Stutman v. Chem. Bank*,
    731 N.E.2d 608 (N.Y. 2000).......................................................................21

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ................................................................................18

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices &*
    *Prods. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ......................................................24

*Trinity Outdoor, L.L.C. v. City of Rockville, MD*,
    123 F. App'x 101 (4th Cir. 2005) ............................................................8, 15

*Tylka v. Gerber Prods. Co.*,
    178 F.R.D. 493 (N.D. Ill. 1998)..................................................................23

*Walsh v. Ford Motor Co.*,
    807 F.2d 1000 (D.C. Cir. 1986)..................................................................28

*WeBoost Media S.R.L. v. LookSmart Ltd.*,
    2014 WL 2621465 (N.D. Cal. June 12, 2014) ...........................................25

*Weisblum v. Prophase Labs, Inc.*,
    2015 WL 738112 (S.D.N.Y. Feb. 20, 2015)...............................................25

*Woods v. Maytag Co.*,
    807 F. Supp. 2d 112 (E.D.N.Y. 2011) ........................................................22

### STATUTES

15 U.S.C. § 2301(6)............................................................................................27

15 U.S.C. § 2301(6)(B).......................................................................................28

15 U.S.C. § 2301(7)............................................................................................27

15 U.S.C. § 2310(d)(1) .......................................................................................27

815 I.C.S. § 505/2 ..............................................................................................23

CAL. BUS. & PROF. CODE § 1750 ...............................................................................18

CAL. BUS. & PROF. CODE § 17200 ........................................................................14, 17

CAL. BUS. & PROF. CODE § 17500 ........................................................................18, 20

CAL. BUS. & PROF. CODE § 17580.5 .....................................................................18, 19

CAL. CIV. CODE § 1770(a) .......................................................................................19

CAL. CIV. CODE § 1780 ............................................................................................20

CAL. CODE REGS. tit. 17, § 93120, *et seq.*.......................................................... *passim*

CAL. HEALTH & SAFETY CODE § 25249.6 ............................................................18

FLA. STA. § 501.201, *et seq.*....................................................................................20

TEX. BUS. & COM. CODE § 2.313(a)(1) ..................................................................22

U.C.C. § 2-607 cmt. 4 (2004) ....................................................................................26

U.C.C. Section 2-314(2)(f) ...........................................................................................6

U.C.C. Section 2-314(c) ............................................................................................26

U.C.C. Section 2-314(f) .............................................................................................26

### OTHER AUTHORITIES

16 C.F.R. §§ 260.6, 260.9, and 260.101 ...................................................................19

Carter, *et al.*, NATIONAL CONSUMER LAW CENTER, *Consumer Warranty Law* §
    2.2.3.5 (4th ed. 2010)...........................................................................................28

Carter, *et al.*, NATIONAL CONSUMER LAW CENTER, *Consumer Warranty Law* §§
    2.2.3.1, 2.3.1.1 & 2.3.4 (4th ed. 2010).................................................................27

The Law of Prod. Warranties, § 5:11 (Dec. 2014); 1 White & Summers, Uniform
    Commercial Code, § 9-13 (5th ed.) .....................................................................26

# I.     INTRODUCTION

Lumber Liquidators increased its profits by using cheaper composite core-boards that contained high levels of formaldehyde in its laminate flooring.  At the same time, it aggressively marketed its compliance with California's strict formaldehyde emissions regulations.  Then Lumber Liquidators got caught.  Over one hundred independently run tests from a number of certified laboratories confirmed that Defendant's Chinese-made laminate flooring containing Medium Density Fiberboard ("MDF") cores emit formaldehyde at levels that were many times those of similar U.S.-made products its competitors sold.  Defendant's MDF cores also emitted formaldehyde at levels that exceeded limits set by the California Air Resources Board ("CARB").  In fact, employees at Defendant's Chinese mills

> [o]penly admitted that they use core boards with higher levels of formaldehyde to make Lumber Liquidators laminates, saving the company 10-15 percent on the price [and] falsely labeling the company's laminate flooring as CARB compliant.  [¶ 11.[1]]

Plaintiffs' claims are straightforward: each bought Lumber Liquidators' laminate flooring products that have been found to contain formaldehyde at levels many times those in comparable products and many times the CARB limits.  Defendant hid this from the Plaintiffs, along with the fact that it did not actually regulate its manufacturers as required.  Moreover, each Plaintiff saw and relied on Lumber Liquidators' assurances that its products met or exceeded California's strict emissions limits for all composite laminate products – no matter where they were sold. These representations were false.  Plaintiffs bring claims under their respective state laws based on omissions and misrepresentations, and for breach of implied warranties.

---

[1] "¶" references are to paragraph numbers in Plaintiffs First Amended Representative Class Action Complaint (Doc. No. 562).

Defendant first claims it did not violate CARB regulations.[2]  As addressed in Section

IV(A), this argument is at odds with the statutory text, which specifically prohibits retailers from

selling finished goods containing MDF cores that exceed CARB's formaldehyde limits.

Defendant then asks the Court to dismiss Plaintiffs' claims under the consumer protection

laws of their respective states.  Sections IV(B) and (C) show that Defendant ignores the

omissions of fact Plaintiffs alleged as an independent basis for these claims, ignore allegations

that state what each Plaintiff saw and on what they relied, and seeks to impose incorrect legal

standards.  Section IV(D) addresses how Defendant's misrepresentations and omissions also

support claims for fraudulent concealment and negligent misrepresentation.

Sections IV(E) and (F) address the alleged breach of implied warranties and the related

claims under the Magnusson-Moss Warranty Act.  Section IV(G) explains why injunctive relief

is necessary to prevent Defendant from exacerbating the potential harms by misleading people

about the health risks they face.  Finally, Section IV(H) shows why declaratory relief is

warranted.  Defendant's motion should be denied.

## II.     STATEMENT OF FACTS

**A.     Plaintiffs Allege that MDF Cores in Defendant's Flooring Emitted Formaldehyde at Levels Far Above California's Limits and Emission Levels of Competitors' Products**

Chronic and long-term exposure to formaldehyde is linked to increased risk of cancer of

the nose and sinuses, nasopharyngeal and oropharyngeal cancer, lung cancer, and leukemia.  ¶ 5.

Formaldehyde also causes sensory irritations, exacerbates asthma, and poses an acute risk to

children.  *Id*.  The California Airborne Toxic Control Measure ("ATCM" or "Regulation") aims

---

[2] Defendant has apparently abandoned its arguments that Plaintiffs' claims are barred by the doctrine of primary jurisdiction and that Plaintiffs used the wrong testing method.  *See* Def. Mot. to Dismiss or Stay filed in *Balero v. Lumber Liquidators*, Case No. 15-cv-01005 (N.D. Cal.) (ECF No. 12) at 8-17, 18-19.

to reduce public exposure to formaldehyde by setting maximum amounts of formaldehyde that products may contain.  ¶ 6.  In 2009, the Regulation became final, and set maximum formaldehyde emission limits for MDF products to take effect in two phases.  The CARB Phase 2 emission standard went into effect as of January 1, 2011.

As detailed in Section IV(A) below, the ATCM mandates that MDF cores in products such as laminated flooring may emit formaldehyde at levels no higher than 0.11 parts per million ("ppm").  ¶ 35.[3]  Goods containing cores that exceed the limits may not lawfully be sold in California.  This prohibition applies to retailers, such as Lumber Liquidators.  Plaintiffs allege that certified laboratories tested the MDF cores in Lumber Liquidators' products using a test method specified in the Regulation, and that the cores dramatically exceeded CARB's limits.  ¶¶ 8, 10, 43.  Laboratories also tested Defendant's competitors' laminate flooring products and found that they emitted formaldehyde at levels below the CARB limits.  ¶ 8.

## B.   Plaintiffs Allege that Defendant Knew and Hid the Fact that Its Products Contained High Levels of Formaldehyde

Lumber Liquidators exploited California's exacting standards as a marketing tool and touted its products as meeting or exceeding California's standards no matter where they are sold.  ¶¶ 9, 13, 29, 30.  Yet Lumber Liquidators knew this was untrue.  ¶ 60.  Employees in its Chinese mills admitted to using high formaldehyde levels to save Lumber Liquidators 10-15% on the price of production.  ¶ 11.  Defendant also knew, or should have known, that its finished products emitted formaldehyde at levels that far exceeded CARB limits.  ¶¶ 57-59.  Indeed, it conceded that its own testing showed as much.  ¶ 49.

To comply with CARB requirements, Defendant was required to regulate the production methods, quality control systems and testing procedures its suppliers used to ensure the products

---

[3] See CAL. CODE REGS. tit. 17, § 93120.2(a).  Thin MDF (defined as having a maximum thickness of 8mm) can contain no more than 0.13 ppm of formaldehyde. Id.

- 3 -

complied with CARB limits.  ¶¶ 30, 48.  Indeed, Defendant claimed that it tightly controlled and regulated the manufacturing process.  *Id.*  As such, it was more than a downstream retailer.  But Defendant did not actually control the practices of the Chinese mills that manufactured its flooring products.  ¶ 55.  The composite laminate products it sold were manufactured without proper oversight and Defendant did not ensure that its flooring was actually safe to have in a home – yet it kept this information from its customers.  ¶ 56.  Despite knowing that products it was selling for home use contained high and possibly dangerous formaldehyde levels, Defendant did not inform Plaintiffs, or any of its customers, that its products might contain many times the formaldehyde of equivalent products and many times the levels considered safe.  ¶¶ 1, 51, 53, 76, 86, 93, 107, 123, 132, 141.  Plaintiffs allege they were deceived by Defendant's omission and would not have purchased the product had they known it contained more formaldehyde than similar products manufactured in the United States.  ¶¶ 79, 90, 99, 115, 127, 133, 142.

**C.   The Complaint Alleges that Lumber Liquidators Misrepresented the Safety of its Products and the Subsequent Danger to its Customers**

**1.   Lumber Liquidators misrepresented the safety of its products.**

In addition to failing to disclose the extent to which it left its Chinese manufacturers unregulated, and that its products had been shown to contain high and often dangerous levels of formaldehyde, Plaintiffs allege that Defendant affirmatively misrepresented that it took adequate and exacting steps to ensure that its manufacturers met CARB's standards in both their processes and in their products.  ¶¶ 48, 50.  Defendant also falsely represented on its website and in various other materials that its composite flooring products meet the CARB standards for formaldehyde emissions no matter where they are sold, and are therefore safe.  ¶¶ 29, 30.  Indeed, each package of MDF flooring sold by Defendant was stamped with a label stating that the product complies with CARB standards for formaldehyde.  ¶ 46.  It further warranted that all of its products

- 4 -

comply with all applicable regulations.  ¶ 47.  Defendant knew, or should have known, that these

representations were not true.  ¶¶ 53-57.  Plaintiffs allege visiting Defendant's website or

otherwise seeing its representations stating that its products complied with California's

formaldehyde regulations no matter where they are sold.  ¶¶ 72, 83, 93, 103, 119, 130, 139.

Each Plaintiff relied on Defendant's representations that its products were safe and suitable to

have in their home and would not have purchased Defendant's flooring products otherwise.

¶¶ 74, 79, 84, 90, 94, 99, 105, 115, 121, 127, 133, 142.

> **2.     Lumber Liquidators continues to misrepresent the health risks its products pose to customers.**

On March 1, 2015, *60 Minutes* reported its findings that virtually all of the samples of

Defendant's Chinese-made flooring tested at many times CARB's formaldehyde emissions

standards.  ¶ 10.  In response, Defendant launched a marketing campaign to discredit the results

and to cover up the risks its products posed.  Defendant began offering free do-it-yourself air

testing kits.  ¶¶ 14, 62.  Unlike the laboratory tests, these kits do not comply with accepted

industry standards, are inherently unreliable, and are designed to under-report the formaldehyde

levels present.  *Id*.  Even when results show dangerous levels of formaldehyde, Defendant falsely

tells customers that the formaldehyde levels are "normal" and safe.  ¶¶ 15, 63, 65.

The Brandts' experience is a telling example.  Ms. Brandt was pregnant when she and her

husband purchased Defendant's flooring and installed it in the nursery they were preparing.

¶ 101.  The Brandts relied on Lumber Liquidators' safety assurances.  ¶ 105.  Upon seeing the *60*

*Minutes* report, the Brandts had the flooring and the surrounding air tested by independent

professionals.  ¶¶ 109, 113.  On Lumber Liquidators' insistence, they also tested the air using

Defendant's do-it-yourself testing kit.  ¶¶ 110, 111.  Though Defendant has not provided the

- 5 -

actual test results, it sent the Brandts letters stating that the results show that the floors and the air in their infant's room are safe and normal.  ¶¶ 65, 111, 112.[4]

These representations were not only false but were in callous disregard for the health of the Brandts' child.  The independent air test, conducted by a Certified Industrial Hygienist, showed formaldehyde concentration at a level that exceeds all recommended threshold limits for chronic exposure in a home, and that even exceeds limits for a workplace environment (based on an eight-hour exposure to an adult).  ¶ 113.  Upon seeing the results, the Brandts' pediatrician advised that their child not be allowed to sleep in the room in which the flooring was located.  *Id.*

**D.     Plaintiffs Bring Claims Under Their Respective States' Laws**

All Plaintiffs bring claims for fraudulent concealment (Count I) based on allegations that Defendant, but not Plaintiffs, possessed knowledge regarding the production methods and the true content of formaldehyde in its products, and actively concealed these facts.

The Washingtons, Ronquillos, and Balero bring claims under three California consumer protection laws (Counts II-IV).  Their claims are predicated on Defendant's misrepresentations and omissions, and also because it was unlawful to sell finished goods containing non-compliant MDF in California.  *See* ¶¶ 167-68.  The Plaintiffs from Florida, Illinois, New York, and Texas bring similar consumer fraud claims under their respective states' laws (Counts V-VIII).  These claims are based on the allegation that Defendant hid the fact that it failed to provide the necessary oversight to ensure that its products were manufactured in compliance with CARB standards, and that those products actually emitted more formaldehyde than domestic products.  They are also based on Defendant's representation that all its composite flooring products met or

---

[4] Copies of the letters the Brandts received are attached hereto as **Appendix A**.  The letter dated June 9, 2015, is consistent with form letters that Lumber Liquidators sent to customers whose air testing results show levels of formaldehyde up to 0.08 parts per million.  *See* ¶ 65.  The Court can consider documents referred to in the operative complaint in deciding a Rule 12(b)(6) motion.  *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

exceeded California's formaldehyde regulations, regardless of where they were sold.  *See* ¶¶ 29, 30.  These misrepresentations also serve as basis for all Plaintiffs' negligent misrepresentation claim (Count XI).

All Plaintiffs bring claims for breach of the implied warranty of merchantability (Count IX), and for violation of the Magnuson-Moss Warranty Act (Count X).  These claims are predicated on the fact that Defendant's product did not conform to its labeling.  ¶¶ 244, 256.

In addition to damages, Plaintiffs seek injunctive relief to prevent Lumber Liquidators from continuing to mislead customers as to risks to which they are exposed through its home air testing program (Count XI) and a declaratory judgment that the products do not comply with CARB regulations and cannot be labeled as CARB-compliant (Count XII).

## III.   LEGAL STANDARD

A court reviewing a Rule 12(b)(6) motion must accept well-pleaded allegations as true and construe factual allegations in favor of the plaintiff.[5]  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a plausible claim for relief.  A claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]

Claims based on omissions of material facts do not "sound in fraud" and need not meet the heightened pleading requirements of Fed. R. Civ. P. 9(b).  Courts have relaxed the requisite pleading standard "when factual information is peculiarly within the defendant's knowledge or control."[7]  To state a claim for consumer fraud based on an omission, most states require a

---

[5] *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[7] *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989); *see also Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 533 (D. Md. 2013) (holding

plaintiff to allege that the defendant failed to disclose material information that induced the plaintiff to enter into a transaction.[8]  Where subject matter jurisdiction is challenged based on standing, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] 'presume[s] that general allegations embrace those specific facts that are necessary to support the claim.'"[9]

## IV.   ARGUMENT

### A.   Defendant Violated the ATCM by Selling Products Containing MDF Cores that Exceeded Formaldehyde Emission Limits

Plaintiffs allege that Lumber Liquidators' laminated flooring products exceed straightforward formaldehyde emission limits set forth in the ATCM.  Plaintiffs base this allegation on over 100 test results showing excess formaldehyde emissions from Defendant's products (¶¶ 8, 12, 39, 43, 57); on admissions from employees at the mills that manufactured Defendant's MDF core-boards (¶ 11); and on Defendant's own admissions (¶¶ 49, 55).  Because they did not comply with the ATCM, the products could not legally be sold in California and Lumber Liquidators' representations that its products met CARB standards were false.  Lumber Liquidators' arguments to the contrary are incorrect based on the text of the ATCM.

---

that Rule 9(b) is less strictly applied with respect to claims of fraud by concealment or omission of material facts, as opposed to affirmative misrepresentations, because an omission cannot be described in terms of the time, place, maker, or contents of the misrepresentation).  *Accord Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) ("[A]n action under [N.Y. Gen. Bus. L.] § 349 [which does not include misrepresentations] is not subject to the pleading-with-particularity requirements … but need only meet the bare-bones notice-pleading requirements of Rule 8(a)....").

[8] *See, e.g.*, *Benjamin v. CitiMortgage, Inc.*, 2013 WL 1891284, at *4 (S.D. Fla. May 6, 2013); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996).

[9] *Trinity Outdoor, L.L.C. v. City of Rockville, MD*, 123 F. App'x 101, 105 (4th Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1991)).

1.      **The ATCM applies to Lumber Liquidators' sale of formaldehyde-contaminated laminate wood flooring.**

The ATCM sets forth formaldehyde emission limits for "composite wood products," such as MDF, and for the finished goods that contain them.[10]  The ATCM states:

> No person shall sell, supply, offer for sale, or manufacture for sale in California any composite wood product which, at the time of sale or manufacture, does not comply with the emission standards in Table 1.[11]

Table 1 sets the currently applicable limit as 0.11 ppm for MDF and 0.13 ppm for Thin MDF.[12]  Section 8(a) goes on to state:

> [A]ll retailers *must* comply with the requirements of section 93120.2(a) for all composite wood products *and finished goods containing these materials* that are sold, supplied, offered for sale, or purchased in California.[13]

The Regulation sets out five "conditions," each of which constitutes a violation of the emission limits.[14]  The first three specify ways a "composite wood product" (such as the MDF core) can violate emissions standards.[15]  The third condition is violated when an MDF core "is tested at any time after it is manufactured, using either the compliance test method specified in section 93120.9(a) or the enforcement test method specified in section 93120.9(b), and found to

---

[10] For the Court's convenience, a copy of the full ATCM to Reduce Formaldehyde Emissions from Composite Wood Products, CAL. CODE REGS. tit. 17, § 93120, *et seq.*, is attached hereto as **Appendix B**.

[11] CAL. CODE REGS. tit. 17, § 93120.2(a) (Table 1, setting emission limits for MDF cores); *see also id.*, § 93120.1(a)(8) (defining "composite wood product" to include MDF); *id.*, § 93120.1(a)(25) (defining "laminated product" to include finished goods made with laminate affixed to a composite wood platform).

[12] *Id.*, § 93120.2(a).

[13] *Id.*, § 93120.8(a) (emphasis added).

[14] *See id.*, §§ 93120.2(a)(1)-(5) ("A product 'does not comply with the emission standards in Table 1' if….").

[15] *Id.* §§ 93120.2(a)(1)-(3); *see also id.*, § 93120.1(8) (defining "Composite wood products" to include Medium Density Fiberboard (MDF)); *id.*, § 93120.1(28) (defining MDF).

- 9 -

exceed the applicable emission standard specified in Table 1."[16]  In other words, if an MDF core

is found to emit formaldehyde above the 0.11 ppm limit, using either of the specified test

methods, the product does not comply – and it cannot be sold in California.

The fourth and fifth conditions apply to finished goods, such as Defendant's laminate

flooring.  The fourth condition provides that when a finished good contains an MDF core, the

MDF core must comply with the first three conditions.[17]  Specifically, the fourth condition states

that a product "does not comply with the emission standards" if:

> A finished good contains any composite wood product which does not
> comply with the emission standards in Table 1, based on the criteria set
> forth in paragraphs (1), (2), or (3) above [*i.e.*, the first three conditions].[18]

Therefore, if a finished good contains an MDF core that is shown, using one of the

specified methods, to emit formaldehyde above the limits, the finished good also does not

comply with CARB limits and cannot be sold in California.[19]

Defendant does not dispute that it sells laminate wood flooring containing an MDF core.

Plaintiffs allege that, in keeping with the "compliance test method," certified laboratories tested

MDF cores in Defendant's Chinese-sourced laminated flooring using one of the authorized test

---

[16] *See id.*, § 93120.2(a)(3).

[17] *See id.*, §§ 93120.2(a)(4)-(5).

[18] *See id.*, § 93120.2(a)(4).

[19] In addition to this explicit statement in the fourth condition, the ATCM elsewhere confirms that a finished good violates emission limits if its MDF core violates the emission limits.  For example, "laminate product" is defined as "*a finished good … in which a laminate or laminates are affixed to a platform.  If the platform consists of a composite wood product [e.g., an MDF core], the platform must comply with the applicable emission standards*."  *Id.*, § 93120.1(a)(25) (emphasis added); *see also id.*, § 93120.12(e)(2)(C)(2) ("*Finished goods containing ... MDF that does not comply* with the Phase 2 standard may be sold … by retailers until June 30, 2012. Beginning July 1, 2012, *finished goods containing ... MDF ... must comply* with the Phase 2 standard, regardless of the date that the product was fabricated.") (emphasis added).

methods – the "ASTM D 6007-02" method, colloquially known as the "small-chamber" test.[20]
The Complaint alleges that 134 samples were tested "in accordance with the ASTM D 6007-02
as mandated by CARB regulations." ¶ 43; *see also* ¶¶ 8, 10, 12, 57. Virtually all the samples
violated the ATCM's formaldehyde emission limit. ¶ 43. Even tests Defendant itself conducted
showed that the MDF cores in its flooring exceeded ATCM emission limits. ¶ 49.

**2.  Lumber Liquidators' ATCM arguments misread the Regulation.**

The ATCM's provisions are straightforward and Defendant's interpretation is contrary to
the plain language of the statute. First, Defendant analyzes Section 93120.8(b) while entirely
ignoring the previous section, 93120.8(a). It then invents a "safe harbor" provision,[21] where
none exists. Next, Defendant claims a separate standard exists for "finished goods" that the
Regulation's text explicitly contradicts. Then Defendant superimposes a requirement that only
government entities can test for compliance.

**a.  The ATCM prohibits retailers from selling finished goods that contain
non-compliant MDF cores.**

Defendant claims the Regulation applies a different standard to retailers and applies a
different standard for finished goods.[22] This relies on Section 93120.8(b) (addressed in Section
2.b. below). But Defendant ignores the immediately preceding provision, which states: "all
retailers must comply with the requirements of section 93120.2(a) [the limits on formaldehyde
emissions] for all composite wood products *and finished goods containing these materials*…."[23]

Defendant also creates a false distinction between determining whether composite wood
products violate the ATCM and whether finished goods containing those products violate the

---

[20] *See id.*, § 93120.9(a).

[21] Def. Mem. at 1, 3.

[22] *Id.* at 2-3.

[23] CAL. CODE REGS. tit. 17, § 93120.8(a).

ATCM.  Lumber Liquidators asserts that "Plaintiffs rely on the third condition, Subsection

93120(a)(3), for their claim of non-compliance" (*i.e.*, that MDF cores may not test above

emission limits), and argues that "Plaintiffs do not allege that Lumber Liquidators' *finished*

*goods* failed either" the fourth or fifth conditions.[24]  But as explained above, the fourth condition

(Section 93120.2(a)(4)) simply incorporates the previous 3 provisions, and provides that "[a]

finished *good contains any composite wood product which does not comply* with" the first three

conditions.[25]  Therefore, if the finished good contains a non-compliant core (product), the

finished good violates the Regulation.[26]  Plaintiffs allege that compliance method testing reveals

that MDF cores exceed the emission standards, and have thus stated a claim.[27]

> ### b.  There is no "safe harbor" for retailers who sell non-compliant goods and no requirement to show that Defendant knew of violations.

Though it ignores the clear prohibition in § 93120.8(a), against retailers selling finished

goods that contain non-compliant composite wood products, Defendant argues that the following

section, (§ 8(b)), "creates a 'safe harbor' for retailers" who take reasonable precautions to assure

compliance.[28]  This is no "safe harbor."  The section is entitled "*Additional* Requirements to

Help Ensure that Complying Composite Wood Products and Finished Goods are Purchased."

While this provision adds "additional" requirements, such as maintaining records and instructing

suppliers, compliance with these "additional" requirements is in addition to, *not in lieu of*,

compliance with the emission limits.  Not only does the section not mention the words "safe

---

[24] Def. Mem. at 7 (emphasis in original).

[25] *See* CAL. CODE REGS. tit. 17, §§ 93120.2(a)(3)-(4) (emphasis added).

[26] *See id.*; *see also supra* n.22, citing other PROVISIONS in the Regulation showing that finished goods may not be sold if they contain non-compliant cores.

[27] *See, e.g.*, ¶ 43.

[28] Def. Mem. at 3.

harbor," it expressly states that it does *not* create a safe harbor:  "This section *does not affect the liability* of any person for any violation of [the emission limits]."[29]

    As part of its fabricated "safe harbor," Defendant asserts that "[a]n 'emissions' violation alone is not enough" to give rise to liability, that Plaintiffs must show that Defendant "knew at the time of sale that its products did not comply with emission standards," and that Lumber Liquidators failed to take "reasonable prudent precautions."[30]  The text does not support this assertion.  A "knowledge" requirement is Defendant's own invention.  The "reasonable prudent precautions" language is found in Section 93120.8(b), which sets out "additional" requirements retailers must take to help ensure that they purchase compliant products; create any exception to the preceding section's prohibition against selling goods containing non-compliant MDF cores.  In any event, even if the Regulation contained a knowledge requirement (which it does not), the Complaint alleges both that Defendant had such knowledge, and that it failed to take reasonable prudent precautions.  *See, e.g.*, ¶¶ 49, 53, 55, 56, 60.

### c.    Defendant's claim that CARB itself must perform the test ignores the compliance testing provision.

    Defendant incorrectly argues that, based on the ATCM's "enforcement" testing provision, a finished good violates the ATCM only if CARB (or "local air district personnel") conducts the test that discovers the violation.[31]  But Defendant again ignores the preceding "compliance" testing provision.  As stated above, the third condition (Section 93120.2(a)(3) as

---

    [29] CAL. CODE REGS. tit. 17, § 93120.8(b) (emphasis added).  Further confirming that compliance with the "additional requirements" is not a safe harbor, the Retailer Section also provides that Retailers "may be inspected by ARB," not only to audit records, but also to "secure samples for testing … to determine compliance with the applicable emission standards."  *See id.*, § 93120.8(c).

    [30] Def. Mem. at 3, 4, 6 (*e.g.*, "there must be proof that Lumber Liquidators *knew* 'at the time of sale' that its finished goods did not comply…") (emphasis added).
    [31] *See id.* at 8 (citing Cal. Code Regs. tit. 17, § 93120.9(c)).

applied to finished goods by section 93120.2(a)(4)), states that a product does not comply if it is found to exceed emissions standards "any time after it is manufactured, using **either** the compliance test method specified in Section 93120.9(a) **or** the enforcement test method specified in section 93120.9(b)."[32]  Unlike the enforcement method, the compliance method does not refer to CARB, but merely states that compliance "shall be demonstrated by conducting [specified] product emissions tests, verified by third party certification."[33]  A finished good violates the ATCM if a certified laboratory tests the MDF core of the finished product using the ASTM D 6007-02 test method, and the tests show that the core emits formaldehyde at a level that exceeds 0.11 ppm.[34]  This is exactly what Plaintiffs have alleged.[35]

Defendant's argument that private parties cannot challenge violations of the ATCM when the violation involves a finished good is also contrary to California's Unfair Competition Law ("UCL").  As discussed below, the UCL allows plaintiffs to challenge "any *unlawful* business act or practice … as unfair competition that is independently actionable."[36]  The purpose is to prevent businesses from gaining an unfair edge on competitors by violating the law.[37]  The UCL authorizes private citizens to bring suit for violation of *any* law.  This would be frustrated if, as Defendant contends, no one other than CARB could establish that it violated the ATCM.

---

[32] CAL. CODE REGS. tit. 17, § 93120.2(a)(3) (emphasis added).

[33] *See id.*, § 93120.9(a).

[34] *See id.*, §§ 93120.2(a)(3)-(4), 93120.9(a)(2).

[35] Defendant's assertion that "Plaintiffs do not allege core testing" (Def. Mem. at 8 n.6) is incorrect.  The tests Plaintiffs conducted were "core" tests: the ASTM 6007-02 tests that are authorized by the "compliance" method in the third condition for MDF cores.  The Regulation incorporates  this testing method for finished goods.  *See* ¶ 43; CAL. CODE REGS. tit. 17, §§ 93120.2(a)(3)-(4).

[36] CAL. BUS. & PROF. CODE § 17200.  *See* ¶ 166 (Count II).  *See also Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002) (internal quotations omitted).

[37] *See Stop Youth Addiction, Inc.*, 17 Cal. 4th 553, 579 (1998) (superseded by statute on other grounds).

**B.      Defendant Misrepresented and Omitted Material Facts, Injuring Plaintiffs**

    **1.      Plaintiffs have standing to base claims on Defendant's misrepresentations.**

Defendant argues that Plaintiffs do not have standing to challenge misrepresentations about formaldehyde compliance because, according to Defendant, Plaintiffs did not see the alleged representations.[38]  Defendant is attempting to contradict the Plaintiffs' factual allegations that they saw Defendant's formaldehyde representations, and that they influenced their purchase.[39]  On a motion to dismiss, even where standing is alleged, the Court should accept the allegations as true, and construe all inferences in the plaintiffs' favor.[40]

Moreover, even if no Plaintiff saw the representations about formaldehyde compliance, Plaintiffs still have standing as Defendant's misrepresentations caused injury.  If the buying public knew that Lumber Liquidator's products contained many times the formaldehyde of its competitors, the market for the products would have dissipated, the prices would not have been sustainable, and as such Plaintiffs paid prices that were higher than they would have been absent Defendant's misrepresentations.[41]  Defendant's standing argument lacks merit.

    **2.      The alleged truth of the representations is disputed and would not preclude state consumer protection law claims.**

Defendant argues that whatever statements it made are not actionable because "statements of fact are not misleading."[42]  Ignoring, that its statements regarding CARB

---

[38] Def. Mem. at 10.

[39] *See, e.g.*, ¶¶ 72, 79, 83, 90, 94, 103-105, 115, 119, 121, 127, 130, 133, 139, 142.

[40] *Trinity Outdoor*, 123 F. App'x at 105; *Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir. 1982) (applying same standard for 12(b)(6) where Article III standing is at issue).

[41] *Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 607 (C.D. Cal. 2012) (noting deception that caused the price to be higher, caused harm to all purchasers, regardless of reliance); *Ebin v. Kangadis Food Inc.*, 2014 WL 737960, at *7 (S.D.N.Y Feb. 25, 2014) (noting that the injury was an increased price of a good based on a deception).

[42] Def. Mem. at 14-15.

compliance are false, Defendant cites no cases in support, and precedent contradicts the argument. "A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under [UCL] Section 17200."[43]

Here, Defendant claims that its website contains three truthful statements: (1) that the products are purchased from mills that were certified by a third-party certifier; (2) that it requires its vendors to comply with the ATCM; and (3) that it regularly selects goods for testing.[44] Even if all of these assertions are true, these claims are likely to mislead a consumer into believing the flooring complied with CARB and did not have excessive formaldehyde – when it did not. The statements were intended to assuage any concern as to formaldehyde and elicit purchases. Defendant knew the products emitted more formaldehyde than it claimed, and that it lacked sufficient oversight of its Chinese vendors. Either way, it renders the statements of certification, of vendor compliance, and regular testing deceptive.

### 3. Defendant omitted material facts.

Defendant claims its omissions are not actionable because its representations about ATCM compliance were technically true, and it was not obligated to disclose anything it knew to the contrary.[45] The first argument relies on Defendant's claim that it complied with the ATCM by selling finished goods containing non-compliant MDF cores, but this is incorrect. *See supra*

---

[43] *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255 (2009) (internal citation omitted); *see also Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 450 (N.D. Cal. 2012) (rejecting summary judgment and finding that while the statements may have been "technically accurate," a dispute still existed as to whether an ordinary consumer would be misled by defendant's description); *Khoday v. Symantec Corp.*, 2014 WL 1281600, at *17 (D. Minn. Mar. 31, 2014) (applying California law, finding website representation regarding re-downloading software that may have been technically accurate was nonetheless potentially misleading).

[44] Def. Mem. at 15.

[45] *Id.* at 16.

§ IV(A).  Defendant also faces liability for not disclosing the excessive formaldehyde in its

Chinese-made products compared to U.S.-manufactured laminate flooring.  ¶ 51.  Defendant's

second argument – that it is not responsible for any misleading misrepresentations – is both

incorrect (ignoring its own website, ¶ 48), and irrelevant, because Defendant still faces liability

for its deliberate omissions and misstatements regarding the high formaldehyde emission levels

of its products.  ¶¶ 13, 51, 76, 86, 93, 107, 123, 132, 141, 159-64, 171, 172, 197, 208, 231-32.

 Defendant, and not Plaintiffs, knew where the product came from, how little it was paying for it

compared to other sources, and had been put on notice regarding formaldehyde concerns.[46]  The

laws of all states pled in the Complaint make Defendant's omissions actionable.[47]

## C.       Defendant's Actions Violated State Consumer Fraud Statutes

### 1.       The California Plaintiffs pled violations of California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act.

California's Unfair Competition Law ("UCL") permits restitution and injunctive relief

when a defendant engages in unfair, fraudulent, or unlawful conduct.[48]  For the fraudulent prong,

"[a] 'reasonable consumer' standard applies when determining whether a given claim is

---

[46] ¶¶ 49, 54-55, 57, 59-60.  *Accord Parenteau v. Gen. Motors, LLC*, 2015 WL 1020499, at *6 (C.D. Cal. Mar. 5, 2015) (finding knowledge of defect pled where plaintiffs alleged preproduction testing, post-production analysis, other customer complaints); *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1177 (E.D. Cal. 2013) (finding plaintiffs pled a duty to disclose where tag stated laptop's battery life as longer than defendant knew it to be).

[47] Florida and Illinois make omissions actionable if they induced a party to enter into a transaction.  *See, e.g.*, *Benjamin v. CitiMortgage, Inc.*, 2013 WL 1891284, at *4 (S.D. Fla. May 6, 2013); *Connick v. Suzuki Motor Co.*, 675 N.E.2d at 595.  New York requires a seller to disclose material information that is in the seller's exclusive possession.  *Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741 (N.Y. 1995).  California and Texas require disclosure, under the same circumstances, where a partial representation was made, or if a safety issue exists.  *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 995-96 (N.D. Cal. 2013); *Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 744-45 (N.D. Tex. 2014).

[48] CAL. BUS. & PROF. CODE § 17200; *Cel–Tech Commc'n, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

- 17 -

misleading or deceptive,"[49] and the plaintiff must establish reliance.[50]

The California Plaintiffs allege seeing Defendant's website, its advertisements, and labels asserting CARB compliance.  ¶¶ 72, 73, 83.  They also allege that they were not informed of excessive formaldehyde levels in the product.  ¶¶ 76, 86, 93.  Each Plaintiff alleges relying on the representations and omissions, that had they known the truth they would not have purchased the flooring, and suffering damages as a result.  ¶¶ 74, 79, 80, 84, 89, 90, 94, 99, 173, 174.  Plaintiffs sufficiently allege that Defendant's practices were fraudulent under the UCL.[51]

Plaintiffs also state a UCL claim based on unlawful acts.  ¶¶ 167-70.  The UCL allows claims based on "any *unlawful* ... business act or practice" even if the law in question contains no private right of action.[52]  Defendant argues that Plaintiffs failed to properly "borrow" a statute.[53]  But Plaintiffs allege violations of four statutes, along with the ATCM.[54]

Plaintiffs have already demonstrated the UCL unlawful practice can rest on a violation of CARB.  *See* § A(2)(c), *supra.*  Plaintiffs can also rely on a violation of the Greenwashing

---

[49] *Colgan v. Leatherman Tool Grp.*, 135 Cal. App. 4th 663, 682 (2006).

[50] *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009); *Mazza v. Am. Honda Motors Corp.*, 666 F.3d 581, 591 (9th Cir. 2012).

[51] *See, e.g.*, *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d at 1172 (finding fraud prong met where plaintiff alleged he was induced to purchase a laptop and paid more for it due to misleading statements about battery life).

[52] *See Kasky v. Nike, Inc.*, 27 Cal. 4th at 949 (internal quotations omitted) (emphasis added).

[53] Def. Mem. at 18.

[54] Under California law, "'[v]irtually any law or regulation – federal or state, statutory or common law – can serve as [a] predicate for a [UCL] "unlawful" violation.'"  *See Paulus v. Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659, 681 (2006).  Here, Lumber Liquidators violated the ATCM, Proposition 65 (CAL. HEALTH & SAFETY CODE § 25249.6), the Consumer Legal Remedies Act (CAL. BUS. & PROF. CODE § 1750), the False Advertising Act (CAL. BUS. & PROF. CODE § 17500), and the "Greenwashing" Statute (CAL. BUS. & PROF. CODE § 17580.5).  *See* ¶¶ 167-70.

- 18 -

Statute,[55] which proscribes deceptive environmental marketing and cites to the Federal Trade

Commission ("FTC") document for guidance.  The claims here fall under the FTC guidance as

deceptive.  For example, the FTC deems deceptive falsely representing that a product is "non-

toxic," and even cites "formaldehyde-free," where it is not, *as an example of a deceptive claim*.[56]

While Defendant cites a case claiming that "formaldehyde free" was not actionable under the

Greenwashing statute, the decision merely noted that a defendant cannot use the statute's safe

harbor provision to obtain dismissal if the plaintiff has not plead a claim under that statute.[57]

Defendant also asserts that Plaintiffs cannot rely on "Proposition 65" because they did

not provide pre-suit notice.[58]  Defendant does not mention that it had notice of a Proposition 65

violation in 2014 and is heading toward trial.  Defendant cannot claim any prejudice based on the

absence of a redundant notice that their products contained excessive formaldehyde.

In addition, California's Consumer Legal Remedies Act ("CLRA") proscribes "unfair

methods of competition and unfair or deceptive acts or practices … in a transaction intended to

result or which results in the sale or lease of goods or services to any consumer."[59]  Conduct

"'likely to mislead a reasonable consumer'" violates the CLRA.[60]  § 1770(a)(5) prohibits

"[r]epresenting that goods or services have … characteristics, ingredients, uses, benefits, or

quantities which they do not have…."  Section 1770(a)(7) prohibits "[r]epresenting that goods or

---

[55] CAL. BUS. & PROF. CODE § 17580.5.

[56] *See* "Guides for the Use of Environmental Marketing Claims," 16 C.F.R. §§ 260.6, 260.9, and 260.101.

[57] *Dodson v. Tempur-Sealy Int'l, Inc.*, 2014 WL 1493676, at *3 (N.D. Cal. Apr. 16, 2014).

[58] Def. Mem. at 18.

[59] CAL. CIV. CODE § 1770(a).

[60] *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1314 (C.D. Cal. 2013).

services are of a particular standard, quality, or grade … if they are of another." The CLRA does not require reliance, only that the consumer suffered damage from the misconduct.[61]

For their CLRA claims, the California Plaintiffs pled that Defendant misrepresented the goods through statements and omissions, and that Plaintiffs suffered harm as a result. ¶¶ 184-189. Nothing more is required.

This same conduct supports a claim under the False Advertising Law.[62] To prove a violation, the plaintiff must show that (1) the defendant engaged in unfair, deceptive, untrue or misleading advertising and (2) the plaintiff suffered injury in fact and lost money or property.[63] "Advertising" includes any statement made in connection with the sale of goods or services.[64] Defendant's misleading assertions about CARB compliance satisfy this requirement, and Plaintiffs alleged that the representations caused harm. ¶¶ 178-182. The California Plaintiffs have adequately pled Counts II-IV.

### 2. The Brandts sufficiently alleged a violation of the Florida Deceptive and Unfair Trade Practices Act.

The Florida Deceptive and Unfair Trade Practices Act[65] has three elements: a deceptive or unfair practice, causation, and actual damages.[66] The Florida Act does not require reliance, but only a showing that the practice would deceive the reasonable consumer, where uniform material misrepresentations are at issue.[67]

---

[61] CAL. CIV. CODE § 1780.

[62] CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500.

[63] *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 819 (2007).

[64] *Chern v. Bank of Am.*, 15 Cal. 3d 866, 875-76 (1976).

[65] FLA. STA. § 501.201, *et seq.*

[66] *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1292 (M.D. Fla. 2009).

[67] *Rikos v. Procter & Gamble Co.*, 2015 WL 4978712, at *13-14 (6th Cir. Aug. 20, 2015) (collecting cases).

The Brandts reviewed Defendant's website and saw various safety representations.

¶ 103.  The flooring they purchased stated that it complied with CARB standards, and the Brandts were not told that the product actually exceeded those standards and emitted far more formaldehyde than other comparable flooring products, as testing showed.  ¶¶ 105-107, 113. Had they known about the formaldehyde levels, the Brandts would not have bought Defendant's flooring.  ¶ 115.  The Brandts' assertions demonstrate deceptive conduct, causation, and damages.

### 3.      The Cloudens allege a sufficient claim under GBL § 349.

New York General Business Law ("GBL") § 349 provides a private right of action to those injured by "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  The elements include: (1) that the act or practice was consumer-oriented; (2) that the act or practice was misleading in a material respect; and (3) that the plaintiff was injured as a result.[68]  Reliance is not a required element.[69]

The Cloudens saw Defendant's website and advertisements describing the products as safe, and also saw the label warranting CARB compliance.  ¶¶ 119-120.  The Cloudens were not informed of the amount of formaldehyde the flooring actually had.  ¶ 123.  Testing showed the Cloudens' flooring exceeded CARB limits.  ¶ 125.  Because of the omissions and misrepresentations, the Cloudens bought a product they would not have bought, paid for

---

[68] *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).

[69] *See, e.g.*, *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000) ("[A]s we have repeatedly stated, reliance is not an element of a section 349 claim.").

installation, face the costs of replacement, and suffered consequential damages.  ¶¶ 127, 216.

These allegations state a claim under GBL § 349.[70]

Defendant argues that the Complaint fails to state a GBL claim because it only alleges

that the Cloudens would not have bought the flooring had they been told the truth, citing *Small v.*

*Lorillard Tobacco Co., Inc.*[71]  In contrast to *Small*, where the plaintiffs did not allege that they

would have paid any less for the cigarettes had the addictive nature of the products been

disclosed and thus failed to plead a "manifestation of either pecuniary or 'actual' harm,"[72] the

Cloudens allege they would not have purchased the flooring, that they suffered additional costs,

and that they face further remediation costs.  ¶¶ 127, 214, 215.[73]  In addition, in *Small*, there was

no difference between the purchase price for cigarettes after the fraud was revealed; thus the

plaintiffs did not show a pecuniary harm related to the fraud.  Here, Defendant removed the

flooring from the market after the deceptive conduct was exposed.

### 4.    Defendant violated the Texas Deceptive Trade Practices Act.

The Texas Act makes breaches of both express and implied warranties actionable.[74]  The

Parnellas pled that a written warranty under the Magnusson-Moss Act constitutes an express

warranty created by statute, making it actionable under the Texas Act.[75]  *Id.  See* § E, *infra*.  By

---

[70] *See, e.g.*, *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 129 (E.D.N.Y. 2011) (holding that plaintiff plausibly alleged the defendants had knowledge of a purported defect and failed to disclose that information sufficed a deceptive practice by omission under GBL § 349).

[71] Def. Mem. at 19 (citing *Small v. Lorillard Tobacco Co., Inc.*, 720 N.E.2d 892 (1999)).

[72] *Id.*

[73] *See, e.g.*, *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d at 1331-33 (finding GBL claim pled where plaintiff alleged out-of-pocket expenses related to fraud).

[74] *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 438 (Tex. 1995).

[75] A written warranty under the MMWA falls well within the umbrella of an express warranty as defined in Texas.  *See* TEX. BUS. & COM. CODE § 2.313(a)(1) (an express warranty

importing Magnuson-Moss, the Texas Act also imports the FTC's interpretation of the "basis of the bargain" requirement in the Magnuson-Moss definition of "written warranty."[76]  And, as set forth below, the "basis of the bargain" test does not require pleading reliance under the Act. Furthermore, in contrast to Defendant's assertion,[77] the Parnellas gave pre-litigation notice when they contacted Lumber Liquidators, received an air test kit, and were rebuffed from further relief. *See* § IV( D), *infra*, and ¶ 135.

### 5.   Defendant violated the Illinois Consumer Fraud Act.

Under the Illinois Act, a Plaintiff must allege: (1) a deceptive act or practice; (2) an intent that plaintiff rely on the deception; (3) that the deception occurred in the course of commerce; and (4) actual damages as a result.[78]  Reliance is not a required element.[79]  Instead, the causal requirement is whether the deception caused an injury through direct or indirect communication or advertising from the Defendant.[80]  The statute explicitly covers omissions of material fact.[81]

Here, Tanya Burke viewed Defendant's website and saw information about the safety and compliance of its product.  ¶ 139.  The Burkes did not know, because Defendant did not disclose, that Defendant's flooring actually emitted formaldehyde at levels far in excess of other available

---

constitutes an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain").

[76] *Parkway*, 901 S.W.2d at 438.

[77] Def. Mem. at 27 n.32.

[78] *De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009).

[79] *Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 499 (N.D. Ill. 1998) ("[P]roof of actual reliance on the part of each Plaintiff is not required under the ICFA.").

[80] *Rikos v. Proctor & Gamble Co.*, 2015 WL 4978712, at *12.

[81] 815 I.C.S. § 505/2.

010503-11 824267 V1

products.  ¶¶ 141, 231.  Had the Burkes known this, they would not have purchased Defendant's

flooring, and they suffered an injury as a result.  ¶¶ 142-143, 233, 237, 238.[82]

### D.    Plaintiffs Properly Pled Fraudulent Concealment and Negligent Misrepresentation

As noted above, Plaintiffs allege actionable misrepresentations and material omissions.

*See* §§ IV(B) & (C), *supra*.  Plaintiffs have also pled the elements for fraudulent concealment.

The Complaint alleges that Defendant knew about excessive formaldehyde levels, knew about its

lack of oversight over its Chinese vendors, and failed to disclose what it knew to purchasers such

as Plaintiffs.  ¶¶ 51, 53, 60, 158-61, 259-262.[83]  Defendant's unreliable air test kits and

disingenuous communications regarding risks customers now face also support these claims.[84]

Defendant mistakenly asserts that the economic loss doctrine precludes fraudulent

concealment and negligent misrepresentation claims.[85]  The economic loss doctrine applies to

prevent tort remedies from displacing contract remedies.  The highest courts in California,

Illinois, and Texas preclude applying the economic loss doctrine to claims involving frauds that

induced purchases and negligent misrepresentation.[86]  New York law is in accord.[87]

---

[82] Defendant also claims that the Burkes did not plead an intent to deceive because Plaintiffs failed to allege a violation of ATCM.  Def. Mem. at 19.  First, Plaintiffs adequately alleged violations of the ATCM.  *See* § A, *supra*.  Second, independent of the ATCM, Plaintiffs pled Defendant intentionally hid that its Chinese-made flooring contained more formaldehyde than comparable U.S.-made flooring.  ¶¶ 231, 232, 236.

[83] *See Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784, at *6 (C.D. Cal. May 4, 2009) (finding allegations that defendant's "measured and selective responses" to owners' complaints but "concealed the problem from the general customer base" to be sufficient); *see, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1192 (C.D. Cal. 2010) (finding allegations that Toyota repeatedly denied the existence of the alleged defect demonstrated active concealment).

[84] *Id.* at 1192 (finding allegations that Toyota repeatedly denied the existence of the alleged defect demonstrated active concealment).

[85] Def. Mem. at 20-21.

[86] *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004); *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 88-89 (1982) (excepting fraud and negligent

Notwithstanding Defendant's assertion,[88] under Florida law the economic loss doctrine is not applied to fraud or negligent misrepresentations claims where "the fraud is in a term of the bargain," but only where the "fraud relates to an act of performance" covered by the contract.[89] Here, the fraud is alleged not as an act of performance, but that the fraudulently omitted facts induced the Plaintiffs to buy the flooring.  ¶¶ 74, 84, 94, 115, 121, 133, 142, 162-164.[90]  Thus, the economic loss doctrine does not bar Plaintiffs' fraud or negligent misrepresentation claims.

        The doctrine also does not apply where the product damages property beyond what was purchased.[91]  Here, the Brandts (and others), allege that the product damaged their home, requiring removal of the product and consequential damages.  *See, e.g.*, ¶¶ 115, 127, 220, 227.

---

misrepresentation from the economic loss doctrine); *Formosa Plastic Corp. USA v. Presidio Eng'rs & Contractors*, 960 S.W.2d 41, 47 (Tex. 1998).

    [87] *Elkind v. Revlon Consumer Prods. Corp.*, 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015) (noting that New York courts permit fraud and contract claims to proceed in tandem to recover pure economic loss); *Weisblum v. Prophase Labs, Inc.*, 2015 WL 738112, at *12 (S.D.N.Y. Feb. 20, 2015) (declining to dismiss negligent misrepresentation and fraud claims based on economic loss doctrine).

    [88]  Def. Mem. at 23; *Burns v. Winnebago Indus., Inc.*, 2013 WL 4437246, at *4 (M.D. Fla., Aug. 16, 2013).

    [89]  *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 965 (N.D. Cal. 2014) (applying Florida law to hold that fraudulent concealment claims premised on presale failure to disclose defects were not barred by economic loss doctrine).  *See generally Gov't of Guam v. Kim*, 2015 WL 1956531, at *15 (Guam Apr. 28, 2015) (collecting cases).

    [90]  Defendant cites to *WeBoost Media S.R.L. v. LookSmart Ltd.*, 2014 WL 2621465, at *6 (N.D. Cal. June 12, 2014), to argue that California does not except fraudulent concealment from the economic loss doctrine.  Def. Mem. at 23.  While the *WeBoost* court dismissed the fraudulent concealment claims, it granted plaintiffs leave "either to explain how its fraudulent concealment theory avoids being barred by the economic loss rule, to reframe its fraud theory in terms of fraudulent inducement, or both."  *Id.* at *10.  Here, Plaintiffs pled that the fraud induced them to make their purchases.  As such, the Economic Loss Doctrine does not apply to California claims.

    [91]  *Schuster Equip. Co. v. Design Elec. Servs., Inc.*, 554 N.E.2d 1097, 1099 (1990) (rejecting the economic loss doctrine where defect led to fire that damaged other property); *Burns*, 2013 WL 4437246, at *3 (noting that the economic loss doctrine applies only where the defect did not cause "any injuries or damage to other property").

### E.  Plaintiffs Sufficiently Pled an Implied Warranty Claim

UCC Section 2-314(2)(f) defines a product as un-merchantable when it fails to conform

to promises or affirmations on its label.  In contrast to Defendant's protestation,[92]  Plaintiffs need

not allege that the flooring was unsafe, or unfit for use.  "The language is simply a restatement of

the express warranty under § 2-313, although there is no necessity of showing any reliance or

other 'basis of the bargain' when the buyer uses the implied warranty theory."[93]  The label here

promised compliance with CARB as to formaldehyde.  ¶ 46.  All of the representative states

recognize UCC Section 2-314(f).  ¶ 244 (citing statutes).  Defendant's cases regarding "fitness

for its ordinary purpose" and UCC Section 2-314(c) are irrelevant.

Defendant also overstates the notice of breach of warranty requirement.[94]  The notice

requirement of Section 2-607 of the UCC is intended to eliminate any prejudice to sellers from

having to defend against lawsuits related to problems that they did not know about, and could not

remedy prior to litigation.[95]  Here, there was a television program in which the Defendant's then

---

[92] Def. Mem. at 23 (citing the wrong statute, UCC § 2-314(2)(c)).

[93] The Law of Prod. Warranties, § 5:11 (Dec. 2014); 1 White & Summers, Uniform Commercial Code, § 9-13 at 523 (5th ed.).  *See also Hauter v. Zogarts*, 534 P.2d 377 (Cal. 1975) (finding golf-training device did not conform to label where label said it was "completely safe"; reliance not required);  *Native Am. Arts, Inc. v. Bundy-Howard, Inc.*, 2002 WL 1488861, at *2 (N.D. Ill. July 11, 2002) (permitting suit against sellers based on label suggesting products were made by Native Americans).

[94] Def. Mem. at 23.

[95] *In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*, 2015 WL 4591236, at *27-28 (D.N.J. July 29, 2015); U.C.C. § 2-607 cmt. 4 (2004).  In addition, New York does not require pre-litigation notice for retail sales like those here.  *Neri v. R.J. Reynolds Tobacco Co.*, 2000 WL 33911224, at *19 (N.D.N.Y. Sept. 28, 2000).  Florida courts hold that making the defendant aware of a problem with the product suffices.  *Exim Brickell LLC v. PDVSA Servs. Inc.*, 516 F. App'x 742, 752-53 (11th Cir. 2013) (holding that email to defendant reporting the problem with the product constituted sufficient notice); *Horton v. Woodman Labs, Inc.*, 2014 WL 1329355, at *3 (M.D. Fla. Apr. 2, 2014) (allegations that plaintiff orally communicated problem with the product constituted sufficient pleading of notice); *Stella v. LVMH Perfumes & Cosmetics USA,*

CEO participated and was put on notice about the breach. Thereafter, Defendant stopped selling

the product and started offering incorrect advice on acceptable formaldehyde levels. Even

assuming notice of breach was missing here, Defendant can cite no prejudice.

Further, several Plaintiffs did give notice to the Defendant. The Parnellas, Mr. Balero,

and the Brandts all contacted Lumber Liquidators and expressed concern about their purchase.

Defendant sent some of them air test kits. ¶¶ 95, 110, 135. Defendant replied that the

formaldehyde results (which the Plaintiffs never got to see) showed no reasons to worry. *See,*

*e.g.*, ¶¶ 111, 112. This post-purchase contact qualifies as notice of breach.[96]

## F. Defendant Violated the Magnuson-Moss Warranty Act

The Magnuson-Moss Act provides for two claims relevant to Plaintiffs' complaint: (1) a

federal cause of action for breach of a "written warranty,"[97] and (2) a federal cause of action for

breach of implied warranty that incorporates state law.[98] Defendant makes five arguments for

dismissal of the Magnuson-Moss count – all of which fail.[99]

First, Defendant argues that the Complaint does not name 100 individual plaintiffs. But

the Court's CAFA jurisdiction moots that jurisdictional requirement.[100] Second, Defendant

---

*Inc.*, 564 F. Supp. 2d 833, 837 (N.D. Ill. 2008) (Illinois does not require a party to plead direct notice when "the seller has actual knowledge of the defect of the particular product.").

[96] *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1102 (11th Cir. 1983); *Maldonado v. Creative Woodworking Concepts, Inc.*, 694 N.E.2d 1021, 1026 (Ill. Ct. App. 1998), *as modified on denial of reh'g* (June 12, 1998); *Hubbard v. Gen. Motors Corp.*, 1996 WL 274018, at *4 (S.D.N.Y. May 22, 1996).

[97] 15 U.S.C. §§ 2301(6) & 2310(d)(1).

[98] 15 U.S.C. §§ 2301(7) & 2310(d)(1). Caroline L. Carter, *et al.*, NATIONAL CONSUMER LAW CENTER, *Consumer Warranty Law* §§ 2.2.3.1, 2.3.1.1 & 2.3.4 (4th ed. 2010); s*ee also Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004).

[99] *See* Def. Mem. at 25-27.

[100] *Birdsong v. Apple, Inc.*, 590 F.3d 955, 957 n.1 (9th Cir. 2009); *Chavis v. Fid. Warranty Servs., Inc.*, 415 F. Supp. 2d 620, 626 (D.S.C. 2006).

- 27 -

argues that Plaintiffs fail to plead the existence of a "written warranty."  But the complaint identifies the "written warranty" Defendant breached as the warranty that came with the purchase orders.  ¶ 47. [101]  Plaintiffs adequately allege that Defendant breached the written warranty.  *See, e.g.*, ¶¶ 61-68, 255.

Third, Defendant's reliance argument fails because the Act requires only that the "written warranty" be part of the "basis of the bargain," and does not require reliance.[102]  Defendant's practice of putting language on the back of their purchase orders referring to the Limited Warranty evidences an intent that the written warranty be conveyed to the consumer or that it be brought to the consumer's attention in connection with the sale.  Reliance is simply not an element of the Act's "basis of the bargain" test.[103]

Fourth, Defendant again asserts that no CARB violation occurred.  As noted in § IV(A), *supra*, this argument is wrong.  Fifth, Defendant makes the same notice argument as to the implied warranty claim.  This argument is even weaker as to the Magnuson-Moss count.  Most courts hold that the Act does not require pre-litigation notice and opportunity to cure *until* the court has determined that the named plaintiffs constitute adequate class representatives under Rule 23.[104]  Regardless, Plaintiffs provided notice.  *See* § IV( E), *supra.*  At most, the adequacy of notice is a fact issue incapable of supporting dismissal at the pleadings stage.

---

[101] This falls within the Magnuson-Moss Act's definition of "written warranty."  *See*, 15 U.S.C. § 2301(6)(B).

[102] *Id.*; *see also* Carter, *et al.*, NATIONAL CONSUMER LAW CENTER, *Consumer Warranty Law* § 2.2.3.5 (citing 16 C.F.R. §§ 700.3(c) & 700.11(b)).

[103] *See, e.g.*, *Murphy v. Mallard Coach Co.*, 582 N.Y.S.2d 528, 531 (N.Y. App. Div. 1992) (rejecting reliance requirement and holding warranty delivered to plaintiffs *after* they paid the purchase price constituted part of the basis of the bargain).

[104] *See, e.g.*, *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1004 (D.C. Cir. 1986); *Galitskie v. Samsung Telecomms. Am., LLC*, 2013 WL 6330645, at *12 (N.D. Tex. Dec. 5, 2013); *Hill v.*

G.     **Lumber Liquidators' Indoor Air Testing Program is Causing Injury to Class Members and Injunctive Relief is Appropriate under Rule 23(b)(2)**

Plaintiffs allege that Defendant is continuing to mislead Plaintiffs and putative class members regarding risks they face from the formaldehyde-laden flooring. *See* ¶¶ 63, 65, 111-13. In an effort to cover up risks to which it exposed its customers, Defendant has been touting faulty air testing kits, telling putative class members that the sampled air is "normal," and claiming the flooring in the homes is safe when, in fact, it poses acute health risks. Plaintiffs seek to enjoin Defendant from continuing to make these misleading representations.[105] This relief stands apart from the monetary relief Plaintiffs seek.

Defendant argues that because named Plaintiffs independently learned that Lumber Liquidators' safety assurances were false, and took independent measures not to harm themselves or their families, Plaintiffs were not actually deceived, suffered no injury, and do not have standing to enjoin these misleading communications. Taken to its logical conclusion, Defendant insists that to enjoin misleading communications from being sent to thousands of customers, a putative class representative would have to know enough to file suit, but still be deceived by Defendant's misrepresentations and expose herself or her family to harm. Fortunately, courts in this Circuit and elsewhere have rejected this contrivance.[106] That Plaintiffs

---

*Hoover Co.*, 899 F. Supp. 2d 1259, 1266 (N.D. Fla. 2012); *In Re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 804, 824-25 (S.D. Ohio 2012).

[105] Plaintiffs primarily seek an order enjoining Defendant's air testing campaign. While an order enjoining the continued sale of non-compliant goods in California would be appropriate, Plaintiffs recognize it may be unnecessary upon entry of a declaratory finding that the products at issue are not CARB compliant – as they could not legally be sold in California.

[106] *Gantt v. Clemson Agricultural College*, 320 F.2d 611, 614 (4th Cir. 1963); *see also Rackley v. Bd. of Trustees of Orangeburg Reg'l Hosp.*, 238 F. Supp. 512, 515 (D.S.C. 1965) (rejecting challenges to standing based on the claim that injuries were not likely to be repeated); *Moss v. Lane Co.*, 471 F.2d 853, 855 (4th Cir. 1973) (holding that mootness of an individual claim will not necessarily render moot the action of the class). *See also Shahinian v. Kimberly-Clark Corp.*, 2015 WL 4264638, at *8 (C.D. Cal. July 10, 2015) (finding surgeon had standing to

seek relief not only for themselves but for other persons similarly situated is significant in determining their standing to seek injunctive relief.  Where a defendant's policies or actions affect a putative class with a common interest in these policies, plaintiffs are permitted to maintain this action on their own behalf and on behalf of all others similarly situated.[107]

## H.    Declaratory Relief is Warranted

Plaintiffs allege that Defendant's products are not CARB-compliant and that its representations and labeling are therefore false or misleading.  Defendant disagrees.  Previously Defendant disputed its violations by challenging the testing used to reveal the formaldehyde emission levels.  After abandoning that argument, it now advances a strained reading of the Regulation to claim compliance (*See* § IV(A), above).  A clear declaratory order that the products indeed do not comply with CARB regulations and cannot be labeled as such is appropriate.

Plaintiffs do not seek to export CARB regulations throughout the country.  Instead, they seek a declaratory order that the products do not comply with CARB regulations – not an order stating where they can or cannot be sold.  Nor do Plaintiffs seek to address past rather than future conduct.  Plaintiffs seek an order preventing Defendant from labeling its products as CARB compliant when they are not.  That relief is purely prospective and is appropriate in this case.

## V.    CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss should be denied.  To the extent the Court is inclined to dismiss any claims alleged in the Complaint, Plaintiffs request leave to amend to cure any deficiencies in the pleadings.

---

enjoin defendant from misrepresenting the quality of its surgical gowns as other class members may not have learned of their deficiencies).

[107] *Id.*

DATED:  October 23, 2015                    Respectfully submitted,

                                            /s/ Steve W. Berman
                                            Steve W. Berman (*Pro Hac Vice*)
                                            E-mail: steve@hbsslaw.com
                                            Ari Y. Brown (*Pro Hac Vice*)
                                            E-mail: ari@hbsslaw.com
                                            Hagens Berman Sobol Shapiro LLP
                                            1918 Eighth Avenue, Suite 3300
                                            Seattle, WA  98101
                                            206.623.7292 (Telephone)
                                            206.623.0594 (Facsimile)

                                            *Plaintiffs' Co-Lead Counsel*

                                            /s/ Nancy Fineman
                                            Nancy Fineman (*Pro Hac Vice*)
                                            E-mail: nfineman@cpmlegal.com
                                            Matthew K. Edling (*Pro Hac Vice*)
                                            E-mail: medling@cpmlegal.com
                                            Cotchett, Pitre & McCarthy, LLP
                                            840 Malcolm Road, Suite 200
                                            Burlingame, CA 94010
                                            650.697.6000 (Telephone)
                                            650.697.0577 (Facsimile)

                                            *Plaintiffs' Co-Lead Counsel*

                                            /s/ Steven J. Toll
                                            Steven J. Toll (VSB No. 15300)
                                            E-mail: stoll@cohenmilstein.com
                                            Douglas J. McNamara (*Pro Hac Vice*)
                                            E-mail: dmcnamara@cohenmilstein.com
                                            Cohen Milstein Sellers & Toll, PLLC
                                            1100 New York Ave NW, Suite 500
                                            Washington, DC 20005
                                            202.408.4600 (Telephone)
                                            202.408.4699 (Facsimile)

                                            *Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2015, a true and correct copy of the foregoing was filed electronically with the Clerk of this Court using the CM/ECF system, in accordance with the Local Rules and the procedures adopted in the Initial Order and Pretrial Order No. 1A.  This filing will cause a copy of the same to be served, via a Notice of Electronic Filing, upon counsel of record who have consented to electronic service in this matter.  Additionally, a true and correct copy of the foregoing was served by U.S. Mail on the following:

**Berg v. Lumber Liquidators, Inc. et al., No. 1:15-cv-2716**

**Richard A. Maniskas**
Schiffrin & Barroway, LLP
280 King of Prussia Road
Radnor, PA 19087

**Brown v. Lumber Liquidators, Inc. et al., No. 1:15-cv-2659**

| | |
|---|---|
| **Warren T. Burns** | **Korey A. Nelson** |
| **Daniel H. Charest** | **Elizabeth A. Roché** |
| Burns Charest LLP | Burns Charest LLP |
| 500 N. Akard, Suite 2810 | 365 Canal Street, Suite 1170 |
| Dallas, TX 75201 | New Orleans, LA 70130 |

**Doss v. Lumber Liquidators, Inc. et al., No. 1:15-cv-2711**

**Thomas B. Malone**
The Malone Firm, LLC
1650 Arch Street, Suite 1903
Philadelphia, PA 19103

**Guest v. Lumber Liquidators, Inc. et al., No. 1:15-cv-2717**

| | |
|---|---|
| **Anthony J. Bolognese** | **Nicholas J. Guiliano** |
| Bolognese & Associates LLC | The Guiliano Law Firm, P.C. |
| 1617 JFK Boulevard, Suite 650 | 230 South Broad Street, Suite 601 |
| Philadelphia, PA 19103 | Philadelphia, PA 19102 |

**Jacek v. Lumber Liquidators, No. 1:15-cv-3985**

**Michael R. Reese**
Milberg Weiss Bershad & Schulman LLP
1 Pennsylvania Plaza
New York, NY 10119-0165

**Karriem v. Lumber Liquidators, Inc., No. 1:15-cv-2765**

**Elijah Karriem (pro se)**
1404 Asbury Court
Hyattsville, Maryland 20782

**Loup v. Lumber Liquidators, Inc. et al., No. 1:15-cv-2733**

**Fernando Paladino (pro se)**
2302 Justin Lane
Harvey, LA 70058

**Parnella v. Lumber Liquidators, Inc. et al., No. 1:15-cv-2736**

**Cary L. McDougal**
Baron & Budd, PC - Dallas
3102 Oak Lawn Ave
Suite 1100
Dallas, TX 75219

**Smith v. Lumber Liquidators, Inc. et al., No. 1:15-cv-2693**

**Richard Dorman**
Walker Badham
Badham & Buck LLC
2001 Park Place North, Ste. 500
Birmingham, AL 35203-274

/s/ Steve W. Berman
Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP

- 33 -