**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **IN RE: LUMBER LIQUIDATORS** | ) | |
| **CHINESE-MANUFACTURED FLOORING** | ) | |
| **PRODUCTS  MARKETING, SALES** | ) | **MDL No.: 1:15-md-02627-AJT** |
| **PRACTICES AND PRODUCTS LIABILITY** | ) | |
| **LITIGATION,** | ) | |
| ———————————————————— | ) | |

**THIS DOCUMENT RELATES TO ALL CASES**

————————————————————————

**DEFENDANT LUMBER LIQUIDATORS, INC.'S REPLY IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED REPRESENTATIVE CLASS ACTION COMPLAINT
AND TO STRIKE PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF CLASSES**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ......................................................................................................... 1

II.     ARGUMENTS IN REPLY ............................................................................................ 1

    A.      Plaintiffs Fail to Allege that Lumber Liquidators Violated the ATCM ................. 1

        1.      Plaintiffs' Major Premise Is Flawed, for Three Reasons ........................... 2

        2.      Plaintiffs' Minor Premise About Testing Is Also Wrong ......................... 6

    B.      Plaintiffs Cannot Sue Over Statements They Did Not See or Hear ....................... 7

        1.      Plaintiffs Lack Standing to Challenge the Alleged Statements ................. 7

        2.      Plaintiffs' California, New York, Illinois, and Florida Consumer
            Protection Statutes Claims Cannot Succeed Because Plaintiffs Fail
            to Allege Reliance and/or Causation.......................................................... 9

    C.      Plaintiffs Fail to Allege Viable CA UCL, NY GBL, IL CFA, FL DUTPA,
        CA FAL, and CA CLRA Claims for Additional, Independent Reasons ............. 10

        1.      Plaintiffs Fail to Allege an Actionable Representation............................ 10

        2.      Plaintiffs Fail to Allege any Actionable Omission .................................. 11

        3.      Plaintiffs Do Not Plead A Predicate Violation for Their CA UCL
            "Unlawful" Claim .................................................................................... 11

        4.      Plaintiffs Fail To Allege Injury Under the NY GBL and Intent
            Under the IL CFA .................................................................................... 12

    D.      Plaintiffs Do Not Save Their Negligent Misrepresentation and Fraudulent
        Concealment Claims ............................................................................................. 13

    E.      Plaintiffs' Breach of Implied Warranty Claim Cannot Be Maintained ............... 15

    F.      Plaintiffs' Magnuson-Moss Warranty Act Claim is Defective ........................... 16

    G.      Plaintiffs Do Not State a TX DTPA Claim......................................................... 18

    H.      Plaintiffs Cannot Save Their Proposed Rule 23(b)(2) Class Seeking
        Injunctive Relief Regarding Lumber Liquidators' Air Testing Program ............ 18

    I.      Plaintiffs' Request for Declaratory Relief is Inappropriate ................................. 20

III.    CONCLUSION............................................................................................................ 20

-i-

# TABLE OF AUTHORITIES

**Page**

CASES

*Adams v. Bain*,
   697 F.2d 1213 (4th Cir. 1982) .................................................................9

*Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*,
   929 F. Supp. 2d 502 (D. Md. 2013) .........................................................8

*Anderson v. The Hain Celestial Grp., Inc.*,
   87 F. Supp. 3d 1226 (N.D. Cal. 2015) ....................................................19

*Asghari v. Volkswagen Grp. of Am., Inc.*,
   42 F. Supp. 3d 1306 (C.D. Cal. 2013) .............................................13, 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................9, 13

*Baldwin v. Jarett Bay Yacht Sales, LLC*,
   683 F. Supp. 2d 385 (E.D.N.C. 2009)....................................................17

*Broughman v. Carver*,
   624 F.3d 670 (4th Cir. 2010) ..................................................................5

*Connick v. Suzuki Motor Co.*,
   675 N.E.2d 584 (Ill. 1996) ....................................................................16

*Craftmatic Sec. Litig. v. Kraftsow*,
   890 F.2d 628 (3d Cir. 1989)....................................................................8

*Dodson v. Tempur-Sealy Int'l, Inc.*,
   No. 13-CV-04984-JST, 2014 WL 1493676 (N.D. Cal. Apr. 16, 2014) ................................12

*Durso v. Samsung Elecs. Am., Inc.*,
   No. 12-CV-5352, 2014 WL 4237590 (D.N.J. Aug. 26, 2014) ................................16

*Ebin v. Kangadis Food Inc.*,
   297 F.R.D. 561 (S.D.N.Y. 2014) ............................................................8

*Elkind v. Revlon Consumer Prods. Corp.*,
   No. 14-CV-2484(JS)(AKT), 2015 WL 2344134 (E.D.N.Y. May 14, 2015)............................13

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
   960 S.W.2d 41 (Tex. 1998)....................................................................13

*Gantt v. Clemson Agric. Coll. of S.C.*,
  320 F.2d 611 (4th Cir. 1963) ..................................................................19

*Herron v. Best Buy Co.*,
  924 F. Supp. 2d 1161 (E.D. Cal. 2013).................................................11

*Ibarrola v. Kind, LLC*,
  83 F. Supp. 3d 751 (N.D. Ill. 2015) .......................................................15

*In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*,
  No. 1:13-MD-2495-TWT, 2015 WL 3796456 (N.D. Ga. June 18, 2015)...........................14

*In re iPhone Application Litig.*,
  6 F. Supp. 3d 1004 (N.D. Cal. 2013) .......................................................8

*In re MyFord Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014) .....................................................14

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
  No. 05 C 4742, 2012 WL 1015806 (N.D. Ill. Mar. 22, 2012) .................................10

*In re Vaccine Cases*,
  36 Cal. Rptr. 3d 80 (Ct. App. 2005).......................................................12

*Kinetic Concepts, Inc. v. Convatec Inc.*,
  No. 1:08CV00918, 2010 WL 1667285 (M.D.N.C. Apr. 23, 2010)..................................15, 17

*Maxwell v. Remington Arms Co.*,
  No. 1:10CV918, 2014 WL 5808795 (M.D.N.C. Nov. 7, 2014) ............................17

*Miller v. Samsung Elecs. Am., Inc.*,
  No. 14-4076, 2015 WL 3965608 (D.N.J. June 29, 2015).......................................14

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
  435 N.E.2d 443 (Ill. 1982) ...............................................................13

*Moss v. Lane Co.*,
  471 F.2d 853 (4th Cir. 1973) .............................................................19

*Murphy v. Capella Educ. Co.*,
  589 F. App'x 646 (4th Cir. 2014) .........................................................8

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  287 F.R.D. 590 (C.D. Cal. 2012)...........................................................8

*Neri v. R.J. Reynolds Tobacco Co.*,
  No. 98-CV-371, 2000 WL 33911224 (N.D.N.Y. Sept. 28, 2000)..........................16

iii

*Parenteau v. Gen. Motors, LLC*,
   No. CV 14-04961-RGK, 2015 WL 1020499 (C.D. Cal. Mar. 5, 2015) .................................11

*Phillips v. LCI Int'l, Inc.*,
   190 F.3d 609 (4th Cir. 1999) .................................................17

*Rackley v. Bd. of Trs. of Orangeburg Reg'l Hosp.*,
   238 F. Supp. 512 (D.S.C. 1965).................................................19

*Rikos v. Procter & Gamble Co.*,
   799 F.3d 497 (6th Cir. 2015) .................................................10

*Robinson Helicopter Co. v. Dana Corp.*,
   102 P.3d 262 (Cal. 2004) .................................................13

*Schimmer v. Jaguar Cars, Inc.*,
   384 F.3d 402 (7th Cir. 2004) .................................................18

*Schuster Equip. Co. v. Design Elec. Servs., Inc.*,
   554 N.E.2d 1097 (Ill. App. Ct. 1990) .................................................14

*Shahinian v. Kimberly-Clark Corp.*,
   No. CV 14-8390 DMG, 2015 WL 4264638 (C.D. Cal. July 10, 2015)...................................19

*Small v. Lorillard Tobacco Co.*,
   720 N.E.2d 892 (N.Y. 1999).................................................12

*Stella v. LVMH Perfumes & Cosmetics USA Inc.*,
   564 F. Supp. 2d 833 (N.D. Ill. 2008) .................................................16

*Taliaferro v. Samsung Telecomms. Am., LLC*,
   No. 3:11-CV-1119-D, 2012 WL 169704 (N.D. Tex. Jan. 19, 2012).......................................18

*Tomasino v. Estee Lauder Cos.*,
   No. 13-CV-4692 (ERK) (RML), 2015 WL 4715017
   (E.D.N.Y. Aug. 7, 2015).................................................16

*Trinity Outdoor, L.L.C. v. City of Rockville, Md.*,
   123 F. App'x 101 (4th Cir. 2005) .................................................9

*Wamsley v. LifeNet Transplant Servs. Inc.*,
   No. 2:10-CV-00990, 2011 WL 5520245 (S.D.W. Va. Nov. 10, 2011) ...................................8

*WeBoost Media S.R.L. v. LookSmart Ltd.*,
   No. C 13-5304 SC, 2014 WL 2621465 (N.D. Cal. June 12, 2014) .......................................14

*Weisblum v. Prophase Labs, Inc.*,
   88 F. Supp. 3d 283 (S.D.N.Y. 2015).................................................13

iv

**STATUTES**

15 U.S.C.
    § 2301(6)(A) ...............................................................................................................17

N.Y. Gen. Bus. Law
    § 349...........................................................................................................................9

Tex. Bus. & Com. Code Ann.
    § 17.50.......................................................................................................................18

**RULES**

Fed. R. Civ. P.
    § 8.............................................................................................................................10
    § 9(b).........................................................................................................................10

**OTHER AUTHORITIES**

17 Cal. Code Reg.
    § 93120 *et seq.* .........................................................................................................1
    § 93120(2)(a) ..................................................................................................... *passim*
    § 93120.1(a)(15) ......................................................................................................3, 7
    § 93120.2(a)(1)–(5).....................................................................................................5
    § 93120.2(a)(3) ...........................................................................................................7
    § 93120.2(a)(4) ........................................................................................................4, 5
    § 93120.2(a)(5) ........................................................................................................4, 5
    § 93120.4....................................................................................................................7
    § 93120.5(a) ...............................................................................................................4
    § 93120.6(a) ...............................................................................................................4
    § 93120.7(a)(1) ...........................................................................................................4
    § 93120.7(d)(1) ...........................................................................................................2
    § 93120.8(a) ........................................................................................................1, 3, 4
    § 93128.8(b) .............................................................................................................3, 4
    § 93120.8(c) ................................................................................................................7
    § 93120.9(a) ................................................................................................................7
    § 93120.9(b) ................................................................................................................7
    § 93120.9(c) ............................................................................................................5, 7

"Fact Sheet for Retailers of Finished Goods,"
    http://www.arb.ca.gov/toxics/compwood/retailersfacts.pdf. ....................................2

v

## I.    INTRODUCTION

Plaintiffs seek to impose obligations not found in the Airborne Toxic Control Measure, 17 Cal. Code Reg. § 93120 *et seq*. ("ATCM").[1]  According to Plaintiffs, three distinct ATCM requirements collapse down to one, resulting in strict liability for retailers who sell a "finished good" whose core is shown by laboratory testing at any time to violate the ATCM's "Table 1" emissions standards.  Plaintiffs are mistaken.

Lumber Liquidators, Inc. ("Lumber Liquidators") showed in its Opening Memorandum why Plaintiffs' allegations do not support a violation of the ATCM, and therefore do not support any of the 12 causes of action that depend on that violation.  They do not allege (i) "retailer" liability, (ii) an "emissions standard" violation, or (iii) that their testing was "conducted by ARB or local air district personnel."  Plaintiffs, not Lumber Liquidators, have misread the ATCM.

The First Amended Complaint ("FAC") is riddled with other flaws, including lack of Article III standing, reliance, and causation, and Plaintiffs' request for injunctive relief classes should be stricken.  For all of the foregoing reasons, the Court should dismiss and strike the injunctive relief classes.

## II.    ARGUMENTS IN REPLY

### A.    <u>Plaintiffs Fail to Allege that Lumber Liquidators Violated the ATCM.</u>

In its Opening Memorandum, (Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Mem.") at 6-9 (ECF No. 598)), Lumber Liquidators showed why Plaintiffs have not pled a violation of the ATCM.  Plaintiffs disagree, and advance a theory of strict liability that simply doesn't exist.  Their syllogism goes like this:

> **Major premise**:  Section 93120.8(a) says that retailers must comply with the "emission standards" of section 93120(2)(a).  Under that subsection, if

---

[1] All section cites refer to title 17 of the California Code of Regulations.

the MDF core taken from a sample of a retailer's finished good product is shown by any person at any time to exceed emissions limits, every past or future sale of finished goods by that retailer in California violated or violates the ATCM.

**Minor premise**:  Sample testing shows excessive emissions.

**Conclusion**: Plaintiffs have pled ATCM violations as to all Chinese laminate flooring products sold by Lumber Liquidators, throughout the entire class period.

(Pls.' Resp. to Mot. to Dismiss ("Opp.") at 8, 10 (ECF No. 631).)  Both of Plaintiffs' major and minor premises are wrong.[2]

### 1.      Plaintiffs' Major Premise Is Flawed, for Three Reasons.

Plaintiffs' major premise is flawed.  First, the ATCM is not a strict liability regulation. Second, Plaintiffs confuse the distinction between "core" and "finished good" requirements. Third, Plaintiffs ignore the timing requirement—the "at the time of sale" language.[3]

Consider the first error.  Lumber Liquidators is a "retailer."  (Opp. at 9, 13.)  Yet, the FAC never mentions the "retailer" liability provision, section 93120.8.  CARB has prepared a "Fact Sheet for Retailers of Finished Goods" and nothing in it suggests that a retailer faces strict liability.  *Cf.*  http://www.arb.ca.gov/toxics/compwood/retailersfacts.pdf.

Instead, the retailer provision has two parts.  Subsection (b) establishes an "additional" requirement that retailers must take "reasonable prudent precautions" to "ensure that the composite wood products contained in finished goods"—read, the cores—"that they purchase comply with the emissions standards specified in section 93120.2(a)."  In its Opening

---

[2] Lumber Liquidators did not abandon its challenge to Plaintiffs' testing method, (*cf.* Opp. at 2 n.2), rather, it decided this argument requires factual development.

[3] Plaintiffs also conflate the obligations of retailers and fabricators by pointing to the fabricator's CARB label.  (Opp. at 4.)  The fabricator, not the retailer, affixes the stamp, which serves as the fabricator's representation that the finished good was made with a composite wood product that complies with emissions standards in section 93120.2(a).  *See* § 93120.7(d)(1).

sf-3575928

Memorandum, (Mem. at 3), Lumber Liquidators described this as a "safe harbor" for retailers who sell finished goods that are properly labelled by the fabricator, so long as the retailers take "reasonable prudent precautions," which the ATCM then describes.  § 93128.8(b).

Plaintiffs do not allege, as they must, that Lumber Liquidators failed to take "reasonable prudent precautions."  Instead, they advance a strict liability theory.  But section 93120.8(b) doesn't go away just because Plaintiffs deny it exists.[4]  As a fallback argument, Plaintiffs point to FAC ¶¶ 49, 53, 55, 56, and 60.  Those paragraphs allege many other things, but not that Lumber Liquidators failed to take "reasonable prudent precautions."  The Court should dismiss.

Second, notwithstanding taking "reasonable prudent precautions," a retailer can lose the "safe harbor" that arises by securing assurances that products have been fabricated with compliant composite wood products.  How?  Through section 93120.8(a), which incorporates the emission standards of section 93120.2(a).  This is where Plaintiffs confuse "composite wood products" and "finished goods."

Section 93120.2(a) provides that "no person shall sell, supply, [or] offer for sale . . . in California any *composite wood product* which, at the time of sale . . . does not comply with the emissions standards in Table 1 . . . ."  § 93120.2(a) (emphasis added).  According to Plaintiffs, Lumber Liquidators violated this provision by selling *finished goods* whose cores—"composite wood products"—violated the Table 1 thresholds.  (Opp. at 3, 9.)  They misread the ATCM.

Lumber Liquidators does not sell "composite wood products."  It sells "composite laminate flooring products," (FAC ¶¶ 1-2, 42), which are "finished goods," § 93120.1(a)(15) ("finished good" is "any good or product . . . *containing . . . medium density fiberboard*")

---

[4] Whether the "reasonable prudent precaution" standard is subjective (requiring that Plaintiffs must prove Lumber Liquidators' knowledge that its manufacturers' cores violated the emissions standards) or objective (that a "reasonably prudent" retailer would have made such discovery) is immaterial.  What matters is that Plaintiffs haven't pled this requirement at all.

3

(emphasis added).  This matters, because a product can be *either* a "composite wood product" *or* a "finished good," but can't be both.  The two are mutually exclusive.

This dichotomy permeates the ATCM.  Some provisions apply only to "composite wood products" and others only to "finished goods."  And if CARB wants a provision to apply to both, it says so expressly.  *See, e.g.,* §§ 93120.5(a), 93120.6(a), 93120.7(a)(1).  The "retailer" provision is a perfect example.  It talks about "composite wood products and finished goods *containing these materials*."  § 93120.8(a) (emphasis added); *see also* § 93120.2(a)(4), (5) (discussing "finished goods" that "*contain*" "composite wood product") (emphasis added).

Heedless to the words, Plaintiffs press their argument that "[t]he ATCM sets forth formaldehyde emission limits for 'composite wood products,' such as MDF *and for the finished goods that contain them*."  (Opp. at 9 (emphasis added).)  But Plaintiffs' assertion is unburdened by citation.  Notably, they elsewhere admit that the ATCM applies *only* to MDF cores.  (*Cf. id.* at 3 ("the ATCM mandates that MDF *cores* in products such as laminated flooring may emit formaldehyde at levels no higher than 0.11 parts per million") (emphasis added); *id.* at 9 ("Table 1 sets the currently applicable limit as 0.11 ppm *for MDF*") (emphasis added).)

Plaintiffs' thesis—that section 93120.2(a) imposes strict liability on retailers who sell *finished goods* whose cores exceed the "Table 1" standards—is repugnant to the plain meaning.  CARB could have made that section applicable to "composite wood products *and finished goods containing these materials*" but didn't.[5]  Plaintiffs' reading also renders section 93120.8(b) surplusage; why would CARB require "reasonable prudent precautions" if the sale alone of a finished good with a noncompliant core constitutes an ATCM violation?  Finally, Plaintiffs' reading is anomalous, because it would subject retailers to stricter standards than manufacturers.

---

[5] As noted above, CARB knows how to draft such a phrase when it wants to.  *See* § 93120.8(a); *see also* § 93120.2(a)(4), (5).

sf-3575928

Does this mean "finished goods" are unregulated?  Not at all.  Subsections 93120.2(a)(4) and (5) describe conditions or events that render a "finished good" noncompliant with the emissions standards.[6]

Plaintiffs accuse Lumber Liquidators of inventing a separate standard for finished goods.[7] (Opp. at 11.)  The opposite is true.  That separate standard for finished goods is woven into the fabric of the ATCM.  In interpreting statutes, courts must "interpret the text so far as the meaning of the words fairly permits . . . ."  *Broughman v. Carver*, 624 F.3d 670, 677 (4th Cir. 2010) (citation omitted).  Plaintiffs' interpretation mangles the regulation.

Plaintiffs' third error is timing.  They allege they bought certain finished goods at different times, (FAC ¶¶ 69-143); that at unspecified times MDF cores were extracted from samples of other products (not theirs) and tested; and that those tests showed readings that exceed the "Table 1" emissions limits.[8]  (*Id.* ¶¶ 12, 43, 49.)  But Plaintiffs never allege that cores of the products *they* purchased failed an emissions test *prior to purchase*.

---

[6] Subsection 93120.2(a)(4) says that a finished good will be noncompliant (i) if the core was produced by an uncertified manufacturer, (ii) if the testing of the core by the manufacturer or a third-party certifier showed emissions in excess of 0.11 ppm, or (iii) if testing by CARB (or a local air district board) shows emissions to exceed 0.11 ppm.  Subsection (5) will render the finished good noncompliant if testing of the core used in a finished good using the "enforcement test method" of section 93120.9(c) shows results in excess of 0.11 ppm.

[7] The notice or knowledge requirement, which Plaintiffs reject, (Opp. at 13), logically arises from section 93120.2(a)(1)–(5).  The ATCM is structured to require that only manufacturers of composite wood products must test for formaldehyde emissions, but that they certify their results, and warrant ATCM compliance to downstream users.  Other participants in the distribution chain are required to demand such manufacturer certifications and to pass them on to their purchasers.  While a retailer can ordinarily rely on the certifications passed from manufacturers through fabricators that finished good products have been fabricated with ATCM-compliant composite wood products, such reliance becomes unreasonable only if the retailer has notice of facts or events that call the validity of such certifications into question.

[8] Plaintiffs do not allege that the MDF cores that were tested were manufactured by the same manufacturer whose cores were contained in the laminate flooring they purchased.

Plaintiffs assume that if a core from a finished good fails an emissions test in, say, January 2015, the retailer who sold other units of the product in, say, August 2014 violated the ATCM retroactively as to those earlier sales.  And not only do Plaintiffs hope to extrapolate from their sample tests both forward and backward in time, they extrapolate longitudinally as well. They contend that, from their same tests on some finished goods in 2015 that *all* finished goods sourced by that retailer from *all* manufacturers for *all* lots and *all* production lines were similarly noncompliant, regardless of which manufacturer produced the allegedly failed core.  But nothing in the ATCM permits someone to test a sample and extrapolate in that manner.  To the contrary, section 93120.2(a) takes a snapshot of the emissions level of only *that* core "*at the time of sale*."

Finally, Plaintiffs contend that Lumber Liquidators' interpretation would run afoul of the rule that the violation of the ATCM may be made actionable as an "unlawful" practice.  (Opp. at 14.)  But that begs the question.  The issue is not whether a violation of the ATCM can be "borrowed," but whether an ATCM violation has been pled.  It has not been.  The Court should dismiss.

### 2.     Plaintiffs' Minor Premise About Testing Is Also Wrong.

In its Opening Memorandum, (Mem. at 8-9), Lumber Liquidators showed that if noncompliance with the "emission standards" is going to be shown through testing, as alleged here, the testing must have been conducted by "ARB or local air district personnel."  Plaintiffs deny this, and accuse Lumber Liquidators of "superimpos[ing] a requirement that only government entities can test for compliance."  (Opp. at 11.)  Again, they are wrong.

Plaintiffs concede that "enforcement testing" has to be done by "ARB or local air district personnel."  (Opp. at 13.)  But they pivot, and contend they were doing "compliance testing," which can be performed by any certified laboratory.  (*Id.* at 13-14.)

That's not what it says.  In the first place, Plaintiffs once again confuse "cores" and "finished goods."  Section 93120.2(a)(3), on which they rely, by its terms applies to "composite wood products," not "finished goods."  Yet, Plaintiffs' testing was done on "finished goods"— we know that, because the testing was done on Lumber Liquidators' "flooring products," (FAC ¶ 43), which the ATCM defines as "finished goods," § 93120.1(a)(15).

In the second place, Plaintiffs did not do "compliance testing."  They did what CARB would regard as inspection testing that accompanies a facility visit.  But that testing has to follow the "enforcement test method," § 93120.8(c), which, as Plaintiffs admit, (Opp. at 13), can only be done by "ARB or local air district personnel," § 93120.9(b), (c).

Finally, the "compliance test" method on which Plaintiffs rely is described in section 93120.9(a).  It describes a manufacturer's self-testing, which must be done in the manner "specified in section 93120.4"—the provision covering third-party certifiers.  Being a certified laboratory is one thing; acting as a "third-party certifier" is another thing altogether.  Plaintiffs' "certified laboratories" were not testing the samples while acting as "third party certifiers" of the manufacturers.  This wasn't "compliance testing."  These labs were hired by Plaintiffs' lawyers, (FAC ¶¶ 8, 12), to conduct forensic testing in aid of class action litigation.

None of these extracurricular tests can cause a finished product to "not comply with the [ATCM] emission standards."  The FAC fails to state a claim and should be dismissed.

**B.**     **Plaintiffs Cannot Sue Over Statements They Did Not See or Hear.**

       **1.**     **Plaintiffs Lack Standing to Challenge the Alleged Statements.**

Plaintiffs contend that they have standing to pursue their misrepresentation claims even if

none of them ever saw any of the statements challenged in the FAC.[9]  (Opp. at 15.)  Plaintiffs'

argument is that it is sufficient for them to allege that if the "public knew that Lumber

Liquidator's products contained many times the formaldehyde of its competitors" they would

have paid less.  (*Id.*)  In effect, they are asking to satisfy Article III by hypothesizing a group of

consumers who could have relied on unread statements, thereby creating a market beset by

inflated prices.

That won't work.  A plaintiff must establish injury "fairly traceable" to the alleged

misrepresentations by averring actual and personal reliance on specific misrepresentations.  *In re

iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013); (*see also* Mem. at 11 (and

cases cited)).  Plaintiffs cite to inapposite certification cases.  (*See* Opp. at 15 n.41.)  In *Ebin v.

Kangadis Food Inc.*, 297 F.R.D. 561, 568-69 (S.D.N.Y. 2014), for example, the court concluded

that plaintiffs could establish the injury element through common proof because class members

all overpaid for a product that was not 100% pure olive oil.[10]  But both named plaintiffs alleged

they saw and relied upon the alleged misrepresentation.  *Id.* at 564.  Plaintiffs must allege a link

between the alleged wrongdoing and their harm.  Conjecture is not enough.

---

[9] Plaintiffs are incorrect that Rule 9(b) does not apply.  (*Cf.* Opp. at 7.)  *See Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 655-56 (4th Cir. 2014); *Wamsley v. LifeNet Transplant Servs. Inc.*, No. 2:10-CV-00990, 2011 WL 5520245, at *4 (S.D.W. Va. Nov. 10, 2011).  They are also incorrect in thinking that a relaxed pleading standard applies when "factual information is peculiarly within the defendant's knowledge or control."  (Opp. at 7 (citing *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989).)  *Craftmatic* was talking about corporate fraud cases and such things as internal accounting misstatements to which outsiders would not be privy.  As for *Ademiluyi v. PennyMac Mortgage Investment Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 533 (D. Md. 2013), it stands for the unremarkable notion that plaintiffs need not allege the time, place, and contents of an omission; but that is not where the FAC falls short.

[10] Similarly, in *Negrete v. Allianz Life Insurance Co. of North America*, 287 F.R.D. 590, 606-07 (C.D. Cal. 2012), the court found that plaintiffs could establish the causation element of their RICO claim by proving that at least some class members purchased annuities in reliance on the alleged misrepresentations.

8

2.   **Plaintiffs' California, New York, Illinois, and Florida Consumer Protection Statutes Claims Cannot Succeed Because Plaintiffs Fail to Allege Reliance and/or Causation.**

In its Opening Memorandum, Lumber Liquidators set forth a nuanced analysis of what Plaintiffs do and do not allege.[11]  (Mem. at 9-10.)  For example, Lumber Liquidators explained that no plaintiff alleged that he or she saw the "warranty" that Plaintiffs now contend is the basis of their MMWA claim.  (*Id.* at 10.)  It also pointed out that while some of the Plaintiffs alleged that they saw the fabricator's CARB label, those Plaintiffs did not allege that they saw the label pre-purchase.  (*Id.*)  Other than their self-serving say-so that they "saw" Lumber Liquidators' "formaldehyde representations, and that they influenced their purchase," (Opp. at 15), Plaintiffs point to no allegations or authority that contradicts Lumber Liquidators' analysis.  (*Cf. id.* at 18 (California plaintiffs), 21 (Florida plaintiffs), 21-22 (New York plaintiffs), 23-24 (Illinois plaintiffs).)  They fail to cite any decisions concluding that they need not identify the particular statements they saw, and their conclusory statements of reliance do not suffice.[12]  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  For these and all the reasons explained in Lumber Liquidators' Opening Memorandum, Plaintiffs' allegations do not suffice to establish the reliance and/or causation elements of their California's unfair competition law ("CA UCL"), California's false advertising law ("CA FAL"), California's Consumer Legal Remedies Act ("CA CLRA"), New York General Business Law section 349 ("NY GBL"),

---

[11] Lumber Liquidators identified several other claims in its Opening Memorandum that require reliance.  (*See* Mem. at 21 (negligent misrepresentation), 26 (Magnuson-Moss Warranty Act ("MMWA")), 27 (Texas Deceptive Trade Practices–Consumer Protection Act ("TX DTPA")).)  This analysis applies to show why those claims fail as well.

[12] Plaintiffs contend that the Court should "construe all inferences in the plaintiffs' favor," but neither of the cases they cite for this proposition say that.  (Opp. at 15); *see Trinity Outdoor, L.L.C. v. City of Rockville, Md.*, 123 F. App'x 101, 105 (4th Cir. 2005); *Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir. 1982).

sf-3575928

Florida's Deceptive and Unfair Trade Practices Act ("FL DUTPA"), and Illinois' Consumer

Fraud and Deceptive Business Practices Act ("IL CFA") claims under the pleading requirements

set by Federal Rules of Civil Procedure 8 and 9(b).[13]  (*See* Mem. at 12-13.)

     **C.**     **Plaintiffs Fail to Allege Viable CA UCL, NY GBL, IL CFA, FL DUTPA, CA FAL, and CA CLRA Claims for Additional, Independent Reasons.**

     **1.**     **Plaintiffs Fail to Allege an Actionable Representation.**

Lumber Liquidators explained that Plaintiffs fail to allege an actionable representation

because (1) the fabricator's CARB label is not affixed by Lumber Liquidators and is not

misleading, and (2) Plaintiffs only identified true statements from Lumber Liquidators' website.

(Mem. at 14-15.)  Plaintiffs do not dispute that Lumber Liquidators cannot be liable for the

fabricator's CARB label.  (*See* Opp. at 17.)  And although Plaintiffs point to no allegations

suggesting that the statements on Lumber Liquidators' website regarding its sourcing and testing

of laminate products are false, Plaintiffs nonetheless contend that those statements are

misleading.  (*Id.* at 16 & n.43.)  According to Plaintiffs, the statements "are likely to mislead a

consumer into believing the flooring complied with CARB and did not have excessive

formaldehyde . . . ."  (*Id.* at 16.)  But Plaintiffs' interpretation adds words that are not there.

Lumber Liquidators' statements set out a series of steps that it takes when obtaining product,

from buying from certified mills to conducting testing.  (FAC ¶¶ 30, 48.)  There are no

---

[13] Plaintiffs cite to *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 515 (6th Cir. 2015), for the proposition that causation under the FL DUTPA can be established by a showing that the practice was likely to deceive a reasonable consumer.  (Opp. at 20 & n.67.)  As other courts have observed, however, there is a split among Florida courts regarding this issue, and many courts have held that collective proof cannot establish causation.  *See In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. 05 C 4742, 2012 WL 1015806, at *7-11 (N.D. Ill. Mar. 22, 2012).  Courts adopt the latter position where, as here, plaintiffs allege exposure to a variety of different advertising.  *Id.* at *6.

guarantees or affirmative assertions that the laminate flooring does not have "excessive" formaldehyde.  Plaintiffs' misrepresentation-based claims thus cannot succeed.

### 2.    Plaintiffs Fail to Allege any Actionable Omission.

Plaintiffs do not dispute that Lumber Liquidators had no obligation to disclose alleged "facts" of which it had no knowledge.  (*See* Mem. at 16-17.)  Nor do they offer any response to the fact that the sources identified in the FAC as a basis for alleging Lumber Liquidators' knowledge of the alleged omissions fail to establish such knowledge.  (*See id.*)  Plaintiffs point to tests that Lumber Liquidators purportedly conducted showing high levels of formaldehyde, (Opp. at 17 n.46), but they do not allege that those tests occurred prior to when Plaintiffs purchased their laminate flooring.  Plaintiffs' cited authority only emphasizes the deficiencies in the FAC.  (*See id.*)  For example, in *Parenteau v. General Motors, LLC*, No. CV 14-04961-RGK (MANx), 2015 WL 1020499, at *3 (C.D. Cal. Mar. 5, 2015), the plaintiffs alleged that General Motors had knowledge of an alleged safety defect *prior to* their purchases through preproduction testing, preproduction and postproduction failure mode and analysis data, consumer complaints, testing in response to consumer complaints, repair order information and parts data, and other internal sources.[14]  In stark contrast, the only pre-purchase sources Plaintiffs alleged here did not involve the laminate flooring at issue in the FAC.  (*See* Mem. at 17.)  Accordingly, Plaintiffs' omission-based claims should be dismissed.

### 3.    Plaintiffs Do Not Plead A Predicate Violation for Their CA UCL "Unlawful" Claim.

In their Opposition, Plaintiffs offer no answers to the flaws Lumber Liquidators identified with their "unlawful" claim.  (*See* Mem. at 18-19.)  Plaintiffs do not contest that they did not

---

[14] In *Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1167, 1173-77 (E.D. Cal. 2013), there was no dispute that Best Buy knew the information plaintiff alleged it omitted: the advertised battery life of a laptop was calculated without the laptop operating at full capacity.

sf-3575928

allege pre-suit notice, the lack of a proper "warning," and injury for their borrowed "Proposition 65" claim.  (Opp. at 19; *see* Mem. at 18.)  Instead, Plaintiffs say that Lumber Liquidators will not suffer "prejudice" from the lack of notice because Lumber Liquidators knows of another lawsuit pending against it that alleges a Proposition 65 claim.  (Opp. at 19.)  But "prejudice" is not the test, and Plaintiffs cite no cases saying so.  Instead, pre-suit notice, which includes filing a "certificate of merit," is a substantive requirement of a Proposition 65 claim, and serves various purposes including providing a basis for sanctions at the conclusion of litigation for frivolous lawsuits.  *See In re Vaccine Cases*, 36 Cal. Rptr. 3d 80, 92-93 (Ct. App. 2005).  That purpose is not served by Lumber Liquidators' knowledge of another suit filed by different plaintiffs.

Plaintiffs also contend that the claims here are deceptive under California's "Greenwashing Statute" because "formaldehyde-free" is cited by the FTC as an example of a deceptive claim.  (Opp. at 19.)  Plaintiffs are wrong for two reasons.  First, Plaintiffs do not allege that Lumber Liquidators ever advertised the laminate flooring as "formaldehyde-free." Second, a California federal court already concluded that claims such as "formaldehyde-free" and "completely safe" are not actionable under the Greenwashing Statute where those claims are related to health or safety—as Plaintiffs allege—rather than environmental impact.  (Mem. at 18 (citing *Dodson v. Tempur-Sealy Int'l, Inc.*, No. 13-CV-04984-JST, 2014 WL 1493676, at *3 (N.D. Cal. Apr. 16, 2014)).)  Accordingly, Plaintiffs' unlawful UCL claim should be dismissed.

### 4. Plaintiffs Fail To Allege Injury Under the NY GBL and Intent Under the IL CFA.

Plaintiffs cannot distinguish the cases Lumber Liquidators cited showing that they have not sufficiently alleged an injury under the GBL.  (*See* Opp. at 22; *cf.* Mem. at 19 & n.17.)  The problem identified in *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999), is the same as here: a plaintiff cannot establish injury merely by contending that she would not have

12

purchased the product had she known the "truth."  Nor, because the Cloudens allege that they

paid to install the flooring and will have to replace the flooring, (Opp. at 22 n.73), is this case

like *Asghari v. Volkswagen Group of America, Inc.*, 42 F. Supp. 3d 1306, 1332-33 (C.D. Cal.

2013), where the court concluded that the plaintiff's alleged costs for frequent additions of oil

and repairs to his car as a result of an alleged defect was sufficient to state a NY GBL claim.

Unlike the oil and repair costs, the Cloudens' installation costs were not caused by the alleged

issues with the flooring, and they do not allege that they have incurred replacement costs.

As to intent under the IL CFA, Plaintiffs cite to three FAC paragraphs that they contend

show such intent.  (Opp. at 24 n.82.)  Those paragraphs, however, contain only conclusory

statements that must be disregarded on a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.

Plaintiffs' NY GBL and IL CFA claims should therefore be dismissed.

**D.**      **Plaintiffs Do Not Save Their Negligent Misrepresentation and Fraudulent Concealment Claims.**

Plaintiffs assert that, contrary to the authority cited by Lumber Liquidators, (Mem. at 20

nn.18, 22-23), the economic loss doctrine does not preclude their negligent misrepresentation

claim and their fraudulent concealment claim under Texas, California, and Florida law.  (Opp. at

24-25 & nn.86-89.)  The decisions Plaintiffs cite in support of their assertion, however, either

pertain to claims *they do not bring* or *support* Lumber Liquidators' position.[15]

---

[15] *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (*dismissing* New York and California negligent misrepresentation claims under the economic loss doctrine); *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484(JS)(AKT), 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015) (economic loss doctrine does not extend to *intentional* misrepresentation); *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 262, 275 (Cal. 2004) (same); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (economic loss doctrine does not extend to fraudulent *inducement* claims); *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 452 (Ill. 1982) (exception to the economic loss doctrine is limited to those "in the business of supplying information for the guidance of others in their business transactions," which is not alleged here).

13

Plaintiffs also contend that the economic loss doctrine does not bar their fraudulent concealment claim because Plaintiffs assert that they were fraudulently induced to purchase the laminate flooring.[16]  (Opp. at 25.)  But Plaintiffs' fraudulent concealment claim is not so limited.  The claim also challenges Lumber Liquidators' sale of an allegedly defective product and its post-sale actions, including the company's provision of the free air testing kits and "disingenuous communications regarding risks customers now face."[17]  (Opp. at 24; *see* FAC ¶¶ 159 (alleging that laminate flooring manufactured with levels of formaldehyde can pose significant health risks), 161 ("Lumber Liquidators has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Classes and conceal material information regarding the levels of formaldehyde that exist in its Chinese-made composite flooring products.").)

In Plaintiffs' view, the economic loss doctrine also does not apply to bar a claim where the product damages property beyond that which was purchased.  (Opp. at 25.)  In the decision Plaintiffs cite, the court held that the economic loss doctrine did not bar the plaintiff from recovering damages for his computer, which was destroyed by a fire caused by a negligently installed electric line.  *See Schuster Equip. Co. v. Design Elec. Servs., Inc.*, 554 N.E.2d 1097,

---

[16] Plaintiffs cite *In re MyFord Touch Consumer Litigation*, 46 F. Supp. 3d 936, 965 (N.D. Cal. 2014), for the proposition that Florida economic loss doctrine does not apply to fraudulent concealment claims, (Opp. 25 n.89), but subsequent decisions have explained that where, as here, the plaintiff challenges a product as defective, the doctrine applies.  *Miller v. Samsung Elecs. Am., Inc.*, No. 14-4076, 2015 WL 3965608, at *9 (D.N.J. June 29, 2015); *see also In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 1:13-MD-2495-TWT, 2015 WL 3796456, at *3 (N.D. Ga. June 18, 2015) (applying Florida law and concluding that economic loss doctrine bars fraudulent concealment claims based on allegations that roofing shingles did not meet, as was advertised, applicable building codes and industry standards).

[17] Plaintiffs contend that *WeBoost Media S.R.L. v. LookSmart Ltd.*, No. C 13-5304 SC, 2014 WL 2621465, at *5-6 (N.D. Cal. June 12, 2014), is distinguishable because the court granted the plaintiffs leave to amend to allege fraudulent inducement, not fraudulent concealment.  But the economic loss doctrine barred the plaintiff's fraudulent concealment claim as pled, where the plaintiff alleged that it would not have entered into an agreement for the defendant to provide it services "had it known the truth about [the] [d]efendant's operation."

sf-3575928

1099 (Ill. App. Ct. 1990).  In contrast, Plaintiffs nowhere allege that the level of formaldehyde

allegedly in the floors damaged any other elements of their homes.  (*See* FAC ¶¶ 115, 127, 220.)

Additionally, Plaintiffs do not dispute, and thus concede, that their Illinois, New York,

and Texas negligent misrepresentation claims fail because they have not alleged facts giving rise

to a duty to avoid negligent statements, and that their Illinois and Florida fraudulent concealment

claims fail because they have not alleged facts giving rise to a duty to disclose.  *See Kinetic*

*Concepts, Inc. v. Convatec Inc.*, No. 1:08CV00918, 2010 WL 1667285, at *8 (M.D.N.C. Apr.

23, 2010) (a party that fails to address an issue concedes it).  Accordingly, Plaintiffs' negligent

misrepresentation and fraudulent concealment claims should be dismissed.

### E.  Plaintiffs' Breach of Implied Warranty Claim Cannot Be Maintained.

Plaintiffs allege that Lumber Liquidators breached the implied warranty of

merchantability because the flooring (1) would not pass without objection in the trade, (FAC

¶ 243); (2) is not fit for the ordinary purposes for which it was sold, (*id.*); and (3) did not

conform to the fabricator's CARB label, (*id.* ¶ 244).  They now concede, however, that they have

failed to allege a claim under the first two theories, and rely only on the third.  (*See* Opp. at 26.)

But that requires an ATCM violation, which they have not shown.  (*See* Section II.A.)

Plaintiffs now argue that they can avoid the notice requirement of their implied warranty

claim because Lumber Liquidators received notice of the alleged breach when its former-CEO

participated in a television program and thus Lumber Liquidators suffers no prejudice.  (Opp. at

26-27.)  Plaintiffs fail, however, to cite any authority creating an exception to the notice

requirement when there is an alleged lack of prejudice.  Their contention also ignores that "the

purpose of the notice requirement is to provide an incentive for parties to resolve warranty

disputes prior to filing suit." *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 761 (N.D. Ill. 2015).

sf-3575928

By failing to comply with the notice requirement, Plaintiffs prejudice Lumber Liquidators by depriving it of the opportunity to evaluate the facts of each individual case and decide whether resolution could be reached without litigation.

Moreover, Plaintiffs' contention that the Parnellas, Mr. Balero, and the Brandts provided pre-suit notice to Lumber Liquidators is flawed.[18]  (Opp. at 27.)  First, Mr. Balero contacted the company only to ask questions, not to complain of a defect.  (FAC ¶ 95.)  Second, the Parenellas' "rais[ing] concerns" is insufficient to provide notice under Texas law.[19]  (*Id.* ¶ 135.)  Third, neither the Parnellas nor the Brandts alleged that they contacted Lumber Liquidators *before* they filed suit.[20]  Plaintiffs' breach of implied warranty claim thus fails.

### F.    Plaintiffs' Magnuson-Moss Warranty Act Claim is Defective.

Plaintiffs' Opposition fails to address the five flaws that infect their Magnuson-Moss Warranty Act ("MMWA") claim.[21]  (*See* Mem. at 25-27.)

---

[18] Plaintiffs contend that New York does not require pre-litigation notice for retail sales, citing *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-CV-371, 2000 WL 33911224, at *19 (N.D.N.Y. Sept. 28, 2000).  (Opp. at 26 n.95.)  However, that exception is only for sales of "products for human consumption, particularly those that are edible." *Tomasino v. Estee Lauder Cos.*, No. 13-CV-4692 (ERK) (RML), 2015 WL 4715017, at *4 (E.D.N.Y. Aug. 7, 2015).  Plaintiffs similarly argue that notice is not required when the seller has knowledge of the purported defect, citing *Stella v. LVMH Perfumes & Cosmetics USA Inc.*, 564 F. Supp. 2d 833, 837 (N.D. Ill. 2008).  (Opp. at 26-27 n.95.)  However, this interpretation ignores the Illinois Supreme Court's pronouncement that the knowledge must be "of the trouble with the *particular* product purchased by a *particular* buyer" and that Plaintiffs fail to sufficiently allege that Lumber Liquidators had knowledge of the purported defect at the time of sale.  *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 590 (Ill. 1996) (emphasis added).

[19] *See Durso v. Samsung Elecs. Am., Inc.*, No. 12-CV-5352, 2014 WL 4237590, at *8 (D.N.J. Aug. 26, 2014) (under Texas law defendant must know that plaintiff considered the product to be in breach of contract).

[20] Lumber Liquidators identified several other claims in its Opening Memorandum that require notice.  (*See* Mem. at 27 (MMWA and TX DTPA claims).)  This analysis applies to show why those claims fail as well.

[21] Although Lumber Liquidators acknowledges a split of authority on the issue of notice under the MMWA for a putative class action, (*compare* Mem. at 27 *with* Opp. at 28 n.104), it

16

Plaintiffs concede that the fabricator's CARB label is not a "written warranty" under the MMWA.  (*See* Opp. at 28); *Kinetic Concepts, Inc.*, 2010 WL 1667285, at *8.  But by now asserting that they actually mean to rely on the "warranty" that allegedly comes with customers' "purchase orders," (FAC ¶ 47), they fare no better.   Plaintiffs ignore Lumber Liquidators' explanation that the document they quote in the FAC is *not* the warranty that accompanies the purchase of a laminate flooring product, but rather part of a commercial purchase order.[22]  (Mem. at 9 n.8.)  Indeed, not one plaintiff alleges that he or she ever saw or relied on this "warranty," and, noticeably, no copy is attached to the FAC.[23]

Plaintiffs make a final attempt to save their MMWA breach of express warranty claim by arguing that asserting a violation of the MMWA does not require pleading reliance.  This is unsupported in relevant case law.  The MMWA incorporates state-law reliance requirements.  *See, e.g.*, *Maxwell v. Remington Arms Co.*, No. 1:10CV918, 2014 WL 5808795, at *4 (M.D.N.C. Nov. 7, 2014) (dismissing MMWA claim where Plaintiff failed to adequately plead reliance); *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1340 (C.D. Cal. 2013) (same); *Baldwin v. Jarett Bay Yacht Sales, LLC*, 683 F. Supp. 2d 385, 390 (E.D.N.C.

---

observes that not requiring notice until *after* the court determines the representative capacity of the named plaintiffs serves little purpose in encouraging the resolution of conflicts without litigation.  Even if the Court concludes that the MMWA itself does not require notice and opportunity to cure on behalf of the class, that conclusion would not vitiate the notice requirements of the state warranty claims for which the MMWA provides a cause of action.

[22] In any event, the "warranty" does not meet the definition of a "written warranty" under MMWA.  The statements it contains that Plaintiffs rely on do not "relate[] to the nature of the material or workmanship and affirm[] or promise[] that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time."  15 U.S.C. § 2301(6)(A); (*see* Mem. at 25-26).

[23] The document Plaintiffs actually quote from, "Purchase Order Terms and Conditions," is attached as Exhibit A.  The document is *not* accessible to consumers via a link on the Lumber Liquidators' website.  The Court can consider documents relied on in the FAC in deciding the motion to dismiss.  *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

17

2009) ("Where a 'consumer' seeks relief for breach of a 'written warranty' . . . Congress

expected courts to look to state warranty law except as expressly modified in the MMWA.").[24]

Here, California, Florida, Texas, New York, and Illinois state law require reliance in order to

assert a breach of express warranty claim.  (*See* Mem. at 26 n.30.)  Thus, Plaintiffs' failure to

plead reliance dooms their MMWA claim.

### G.      Plaintiffs Do Not State a TX DTPA Claim.

Plaintiffs argue that their TX DTPA claim imports a breach of express warranty claim

under the MMWA, and therefore they do not have to allege reliance, which, according to them,

the MMWA does not require.[25]  (Opp. at 22-23.)  They are incorrect.  First, Plaintiffs' TX DTPA

claim never mentions the MMWA.  Second, the MMWA "provides a federal cause of action for

state law express and implied warranty claims." *Taliaferro v. Samsung Telecomms. Am., LLC*,

No. 3:11-CV-1119-D, 2012 WL 169704, at *10 (N.D. Tex. Jan. 19, 2012) (citation omitted).  It

does not make sense that the TX DTPA would provide a cause of action for a statute that itself

creates a federal cause of action for state law warranty claims.  *Cf.* Tex. Bus. & Com. Code Ann.

§ 17.50.  Third, as explained above, the MMWA requires reliance.  (*See supra* at Section II.F.)

The TX DTPA claim should be dismissed.

### H.      Plaintiffs Cannot Save Their Proposed Rule 23(b)(2) Class Seeking Injunctive Relief Regarding Lumber Liquidators' Air Testing Program.

Although they do not request specific relief related to Lumber Liquidators' free indoor air

testing program in the FAC, Plaintiffs now insist that the injunctive relief they seek is limited to

---

[24] Even the decision Plaintiffs cite says that the MMWA creates a federal cause of action for *written and implied* warranties that incorporate state law.  *See Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004).

[25] Even setting aside the issues with the alleged notice provided by the Parnellas discussed above, (*see supra* at Section II.E), the TX DTPA requires *written* notice, (*see* Mem. at 27 n.32), which Plaintiffs do not allege that the Parnellas provided.

an order enjoining the program.  (Opp. at 29-30.)  Yet, despite an invitation from Lumber

Liquidators to do so, Plaintiffs fail to explain precisely how the free program caused the Brandts

or the Parnellas injury, much less where such allegations are in the FAC.  (*See id.*)  These

failures are fatal to Plaintiffs' challenge to the program.  (*See* Mem. at 27-28.)

  Plaintiffs argue that Lumber Liquidators' position requires that a putative class

representative know enough to file suit, but still be deceived and expose herself to harm.  (Opp.

at 29.)  The Constitution may require just such a plaintiff.  *See Anderson v. The Hain Celestial*

*Grp., Inc.*, 87 F. Supp. 3d 1226, 1234 (N.D. Cal. 2015) (a plaintiff must demonstrate potential

repetition of harm in order to demonstrate Article III standing for injunctive relief).  The Court

need not go so far here, however, as Plaintiffs have not alleged facts supporting harm to a single

plaintiff in the past as a result of the program or allegations supporting future harm.

  Plaintiffs cite to *Shahinian v. Kimberly-Clark Corp.*, No. CV 14-8390 DMG (SHx), 2015

WL 4264638 (C.D. Cal. July 10, 2015), to argue that they have standing to seek injunctive relief

where "other class members may not have learned of" Lumber Liquidators' alleged

misrepresentations.  (Opp. at 29-30 n.106.)  The named representative in *Shahinian*, however,

was found to have "suffered sufficient injury to confer standing."  2015 WL 4264638, at *3.

Because Plaintiffs do not have standing to challenge Lumber Liquidators' free program, they

may not seek injunctive relief on behalf of the class, and this claim should be dismissed. [26]

---

[26] The remaining cases cited by Plaintiffs are inapposite.  *See Gantt v. Clemson Agric.
Coll. of S.C.*, 320 F.2d 611, 614 (4th Cir. 1963) (no discussion regarding Article III standing);
*Rackley v. Bd. of Trs. of Orangeburg Reg'l Hosp.*, 238 F. Supp. 512, 515 (D.S.C. 1965) (holding
that plaintiff has standing to seek injunctive relief where she did not abandon her residence
because there is "every reasonable inference of . . . intent" to return to the district); *Moss v. Lane
Co.*, 471 F.2d 853, 855 (4th Cir. 1973) (remanding where plaintiff had been found to have met
Rule 23(a) prerequisites, and thus dismissal of the class action required specific findings of fact).

Finally, as Plaintiffs lack standing to challenge the air testing program and offer no meaningful opposition, the proposed Rule 23(b)(2) class should be stricken.

## I.     Plaintiffs' Request for Declaratory Relief Is Inappropriate.

Plaintiffs do not disagree that resolving their declaratory relief claim would not end this dispute.  That is reason enough to dismiss the claim.  (*See* Mem. at 29.)  Plaintiffs nonetheless assert that they "do not seek to export CARB regulations throughout the country."  Yet, their request for a "declaratory order that the products do not comply with [California's] CARB regulations" regardless of where the products are sold, (Opp. at 30), improperly requires the extraterritorial application of California's CARB legislation, (*see* Mem. at 29 & n.34). Additionally, Plaintiffs' request impermissibly requires a determination of whether products *already* manufactured and *already* sold to the class members complied with the ATCM, and does not present a question about *future* conduct between the parties.  (*See* Mem. at 29.)

## III.    CONCLUSION

Lumber Liquidators, Inc. respectfully asks the Court to dismiss all of the claims, and to strike Plaintiffs' proposed Rule 23(b)(2) classes.

Dated: October 30, 2015

Respectfully submitted,

LUMBER LIQUIDATORS, INC.
By Counsel

*/s/ Diane P. Flannery*
Diane P. Flannery (VSB No. 85286)
E-mail: dflannery@mcguirewoods.com
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
804.775.1015 (Telephone)
804.698.2047 (Facsimile)

*/s/ William L. Stern*
William L. Stern (Pro Hac Vice)
E-mail: wstern@mofo.com
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
415.268.7000 (Telephone)
415.268.7522 (Facsimile)
*Defendant's Co-Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2015, a true and correct copy of the foregoing was filed electronically with the clerk of this Court using the CM/ECF system, and in accordance with Local Rules and the procedures adopted in the Initial Order and Pretrial Order No. 1A.  This filing will cause a copy of the same to be served, via a Notice of Electronic Filing, upon counsel of record in this matter who has consented to electronic service. I also hereby certify that on October 30, 2015, a true and correct copy was served by U.S. Mail upon the remaining counsel of record, listed below:

**<u>Karriem v. Lumber Liquidators, Inc.</u>**, No. 1:15-cv-2765

**Elijah Karriem (*pro se*)**
1404 Asbury Court
Hyattsville, Maryland 20782

**<u>Loup v. Lumber Liquidators, Inc. et al.</u>,** No. 1:15-cv-2733

**Fernando Paladino (*pro se*)**
2302 Justin Lane
Harvey, LA 70058

*/s/ Diane P. Flannery*
Diane P. Flannery (VSB No. 85286)
E-mail: dflannery@mcguirewoods.com
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
804.775.1015 (Telephone)
804.698.2047 (Facsimile)
*Defendant's Co-Lead Counsel*

sf-3575928