IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| IN RE: LUMBER LIQUIDATORS | ) | |
| CHINESE-MANUFACTURED FLOORING | ) | |
| PRODUCTS MARKETING, SALES | ) | MDL No. 1:15-md-2627 (AJT/TRJ) |
| PRACTICES AND PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | |
| | ) | |

This Document Relates to ALL Cases

PRETRIAL ORDER # 8
(re: Defendant's Motion to Dismiss First Amended
Representative Class Action Complaint and to Strike Plaintiffs'
Request for Injunctive Relief Classes [Doc. No. 597])

Presently pending before the Court is defendant Lumber Liquidators, Inc.'s Motion to

Dismiss First Amended Representative Class Action Complaint and to Strike Plaintiffs' Request

for Injunctive Relief Classes [Doc. No. 597]) (the "Motion").  Upon consideration of the Motion,

the memoranda in support thereof and in opposition thereto, the argument of counsel at the

hearing held on December 1, 2015, and for the reasons set forth below, the Motion is

GRANTED as to the claims for negligent misrepresentation filed in Count XI on behalf of

plaintiffs other than plaintiffs Ryan and Kristin Brandt, DEFERRED as to the Class Action

allegations, and otherwise DENIED.

**I. BACKGROUND**

Plaintiffs' First Amended Representative Class Action Complaint [Doc. No. 562][1] (the

"FAC") alleges the following:

---

[1] On June 12, 2015, the United States Judicial Panel on Multidistrict Litigation entered an Order
[Doc. No. 1] (the "Transfer Order") transferring the above-captioned cases to this Court for
consolidated pre-trial proceedings.  The First Amended Representative Class Action Complaint
is a representative complaint filed pursuant to Pretrial Order No. 5 [Doc. No. 528].  It does not
displace any of the complaints filed in the various actions that have been transferred to this

The State of California, through the California Air Resources Board ("CARB"), has set comprehensive and stringent formaldehyde emission standards which serve as a model for national standards considered by, among other regulatory entities, the United States Environmental Protection Agency. *Id.* ¶¶ 1, 6. Defendant Lumber Liquidators, Inc. sells, supervises, and controls the manufacturing of certain composite wood-based laminate products, including Chinese-manufactured composite wood flooring (the "Products"). *Id.* ¶ 7. Defendant represents on its website and its product packaging that its composite laminate flooring products meet CARB standards for formaldehyde emissions and are therefore safe for consumers. *Id.* ¶¶ 13, 29-30. Although CARB standards only apply to products sold in California, defendant represents on its website that its products meet CARB standards nationwide. *Id.* ¶¶ 9, 13.

The State of California and CARB list formaldehyde as a Toxic Air Contaminant with no safe level of exposure. In April 2007, CARB approved the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products ("ATCM"). The ATCM—a state regulation—became effective in January 2009 and sets limits for decreasing formaldehyde levels in two phases. The second phase standard states that regular medium density fiberboard ("MDF") and "thin" MDF products such as those at issue here should emit no more than 0.11 ppm and 0.13 ppm of formaldehyde, respectively. FAC ¶¶ 6, 8. The CARB regulations also specify test methods that may be used to determine whether products meet the CARB emissions limits. The specific procedures called for in the ATCM regulations, as well as the standards governing when a product violates those regulations, is the subject of much debate and as such,

Court. The First Amended Representative Class Action Complaint consists of plaintiffs and claims from five states selected by plaintiffs' Lead Counsel as representative of all claims filed. As set forth in the Court's Pretrial Order No. 1, ¶ 14 [Doc. No. 10], the Court's rulings on defendant's Motion to Dismiss the FAC will be applied to the actual claims set forth in the individual cases included within this MDL unless a party can establish material differences between its individually-filed claims and those in the FAC.

will be discussed at length, *infra*. After supervising the manufacturing and packaging of the Products in China, defendant then distributes, markets, and sells the Products in California and nationwide.[2] *Id.* ¶ 7.

Between June 2013 and January 2015, at least three separate certified and accredited laboratories tested a significant sample of the Products in accordance with the test methods specified by the American Society for Testing and Materials ("ASTM") as mandated by the CARB regulations. FAC ¶¶ 8, 37. 133 of the 134 tested samples emitted formaldehyde levels in excess of those allowed under CARB limits. *Id.* ¶ 43. In March 2015, the television news program *60 Minutes* featured a segment on Lumber Liquidators' Products alleging that the Products contained dangerous levels of formaldehyde. *Id.* ¶¶ 10-12. Responding to a request for comment on the *60 Minutes* segment, Lumber Liquidators' CEO stated in a letter that its products are "100% safe" and that Lumber Liquidators "compl[ies] with applicable regulations regarding our products, including California standards for formaldehyde emissions for composite wood products . . . ." *Id.* ¶ 45. On March 12, 2015, CBS News published a story on its website reporting that Lumber Liquidators' CEO, on a conference call with investors, admitted that CARB tests on Lumber Liquidators' samples had revealed "high levels of formaldehyde" prior to the *60 Minutes* broadcast. *Id.* ¶ 49.

After the *60 Minutes* report, defendant asserted that those laboratory tests concluding that the Products contained unsafe levels of formaldehyde were improperly conducted because the laboratories removed the laminate coating before testing the Products' composite MDF core. FAC ¶ 61. Defendant thereafter began offering free home testing kits to customers who purchased the Products. The third-party who provides defendant with the testing kits is not

_____

[2] A complete list of the relevant Products is found at FAC ¶ 39.

independent, and is not certified by CARB.  Rather, it is paid by defendant.  Moreover, the method of testing provided for in the testing kits is not commonly accepted, or approved by CARB.  *Id.* ¶ 62.

Plaintiffs allege that even when a home testing kit returns a result indicating that the Products contain unsafe levels of formaldehyde, Lumber Liquidators "has continued to cover up these findings" by sending customers a "lengthy questionnaire" which states that the customers' high formaldehyde levels are due to external home factors apart from the Products, or by simply misrepresenting that a formaldehyde level in excess of the CARB limits is safe.  FAC ¶¶ 63-65.

The FAC also alleges facts specific to each of the named plaintiffs, including the Washingtons (FAC ¶¶ 69-80), the Ronquillos (*id.* ¶¶ 81-90), Joseph M. Balero (*id.* ¶¶ 91-99), the Brandts (*id.* ¶¶ 100-15), the Cloudens (*id.* ¶¶ 116-27), the Parnellas (*id.* ¶¶ 128-36), and the Burkes (*id.* ¶¶ 137-43).  Briefly summarized, the FAC alleges that each named plaintiff purchased the Products in reliance on defendant's various warranties that the Products were safe, became aware that the Products were in fact not safe for the reasons stated above, and suffered harm in the form of the purchase price of the floors, installation costs, replacement costs, and related pecuniary injuries.  *See generally* FAC ¶¶ 69-143.  Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) with respect to twelve causes of action:

Count I: fraudulent concealment (by all plaintiffs and all classes) (FAC ¶¶ 156-64);

Count II: violation of the California Unlawful, Unfair, or Fraudulent Business Acts and Practices Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* (by the Washingtons and Ronquillos, Mr. Balero, and the California classes) (*id.* ¶¶ 165-76);

Count III: violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.* (by the Washingtons and Ronquillos, Mr. Balero, and the California class) (*id.* ¶¶ 177-82);

Count IV: violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* (by the Washingtons and Ronquillos, Mr. Balero, and the California classes) (*id.* ¶¶ 183-93);

Count V: violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* (by the Brandts and the Florida class) (*id.* ¶¶ 194-202);

Count VI: violation of N.Y. Gen. Bus. Law § 349, *et seq.* (by the Cloudens and the New York class) (*id.* ¶¶ 203-16);

Count VII: violation of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.50, *et seq.* (by the Parnellas and the Texas class) (*id.* ¶¶ 217-26);

Count VIII: violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1, *et seq.* (by the Burkes and the Illinois class) (*id.* ¶¶ 227-38);

Count IX: breach of implied warranty (by all plaintiffs and all classes) (*id.* ¶¶ 239-47);

Count X: violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA") (by all plaintiffs and all classes) (*id.* ¶¶ 248-58);

Count XI: negligent misrepresentation (by all plaintiffs and all classes) (*id.* ¶¶ 259-62); and

Count XII: declaratory relief (*id.* ¶¶ 266-67).

Briefly summarized, Lumber Liquidators moves to dismiss the FAC on the grounds that it did not violate the ATCM and therefore did not violate any state consumer protection laws or breach any warranties, that plaintiffs lack standing to sue because they did not rely on any sufficiently identified misrepresentations, and that plaintiffs are not entitled to the relief sought, including declaratory or injunctive relief and class certification.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction with specific jurisdictional requirements and boundaries, possessing only the jurisdiction authorized to them by the United States Constitution and federal statute. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). Fed. R. Civ. P. 12(b)(1) is the appropriate vehicle to contest subject matter

jurisdiction. The plaintiff bears the burden of establishing the court's subject matter jurisdiction when contested under Rule 12(b)(1). *Trinity Outdoor, L.L.C. v. City of Rockville*, 123 F. App'x 101, 105 (4th Cir. 2005) (per curiam). Here, defendant challenges the Court's subject matter jurisdiction based on its claim that plaintiffs do not have standing to assert the claims set forth in the FAC. In analyzing Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction, the Court is entitled to review materials outside the pleadings without converting the proceedings to one for summary judgment. *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005); *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). If a district court lacks subject matter jurisdiction over an action, the action must be dismissed. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. A claim should be dismissed "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true . . . it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *see also Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001). In considering a motion to dismiss, "the material allegations of the complaint are taken as admitted . . . " *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted), and the Court may consider exhibits attached to the complaint. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F. 2d 1462, 1465 (4th Cir. 1991). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*; *see also Bd. of Trustees v. Sullivant Ave. Properties, LLC*, 508 F. Supp. 2d 473, 475 (E.D. Va. 2007).

In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, while Rule 8 does not require

6

"detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (the complaint "must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face"); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008).

### III. ANALYSIS

As defendant recognizes in its Motion, "the gravamen of the FAC is that Lumber Liquidators sold laminate flooring products that exceeded CARB formaldehyde standards.  All twelve counts depend on that assertion." Mot. at 6 (internal citations and quotations omitted). The Court will therefore first consider whether the FAC sufficiently alleges a violation of the ATCM's emission standards by selling the Products.

### A.   Whether Plaintiffs have Sufficiently Alleged that Lumber Liquidators Violated the ATCM

Defendant claims that based on the allegations of the FAC, it did not violate the CARB formaldehyde standards set forth in the ATCM.  More specifically, defendant claims that it did not violate the ATCM because it is a seller only of "finished goods," and not of "composite wood products," and only sellers of "composite wood products"—not "finished goods"—can violate the ATCM. *See, e.g.*, Mot. at 6-9.[3]

---

[3] The FAC alleges that Lumber Liquidators is a seller of "composite laminate flooring products." FAC ¶ 1.  In their briefing, plaintiffs do not appear to contest defendant's claim that it sold to plaintiffs only finished laminate flooring containing a core that qualifies as a "composite wood product" and not "composite wood products" that were not contained in the finished flooring. The Court will therefore consider the plaintiffs' allegation with this understanding.

1.    **Whether Lumber Liquidators Sells "Composite Wood Products"**

Section 93120.2(a)[4] states that "no person shall sell, supply, offer for sale, or manufacture

for sale any composite wood product which, at the time of sale or manufacture, does not comply

with the emission standards in Table 1 . . . . " There is no dispute that Lumber Liquidators

qualified as a "person." The dispositive issue then is whether Lumber Liquidators "sells . . .

composite wood products."

Section 93120.1(38) of the ATCM defines a "Retailer" as "any person or entity that sells,

offers for sale, or supplies directly to consumers composite wood products or finished goods that

contain composite wood products." Section 93120.1(8) defines "composite wood products" as

"hardwood plywood, particleboard, and medium density fiberboard." Critically, Section

93120.1(15) defines "finished goods," in pertinent part, as follows:

> "Finished goods" means any good or product, other than a panel, containing
> hardwood plywood, particleboard, or medium density fiberboard. *Component
> parts are not "finished goods," although they are used in the assembly of finished
> goods.* (emphasis added).

Section 93120.1(7) defines "component part" as follows:

> "Component part" means a fabricated part that contains one or more composite
> wood products and is used in the assembly of finished goods.

Based on these definitions, the Court concludes that (1) defendant is a "retailer" and

therefore sells "finished goods"; (2) the definition of "finished goods" effectively becomes "any

product, other than a panel, containing a composite wood product"; and (3) a "composite wood

product" is a "component part" of "finished goods." The Court further concludes that any

"finished goods" necessarily contain "composite wood products" and that the "composite wood

---

[4] All statutory citations in Part III(A), unless otherwise noted, refer to the Airborne Toxic
Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products, Cal.
Code Regs. tit. 17, § 93120, *et seq.*

product" component of "finished goods" does not become an undifferentiated part of the

"finished goods." Rather, for regulatory purposes under the ATCM, a "composite wood

product" incorporated into "finished goods" as part of the fabrication process retains its identity

as a "composite wood product" for the purposes of Section 93120.2(a). In this respect, the

ATCM treats "composite wood products" incorporated into "finished goods" differently than

"composite wood products" incorporated into other products, such as "new vehicles." In the

latter instance, the "composite wood product" becomes part of the fabricated product and thereby

loses its identity as a distinct component or product subject to regulatory requirements. *See* §

93120.1(8) ("Composite wood products' *does not include* . . . 'composite wood products' used

inside of new vehicles as defined in section 430 of the California Vehicle Code . . . . ")

(emphasis added). The Court therefore concludes that the sale of "finished goods" also

necessarily constitutes the sale of a "composite wood product." The parties agree that Lumber

Liquidators sells "finished goods" as defined in the ATCM. The Court therefore concludes that

Lumber Liquidators also sells "composite wood products" whenever it sells "finished goods."

  The Court's reading of the ATCM is further supported by that portion of Section

93120.2(a) which states, in pertinent part, "[a] product 'does not comply with the emissions

standards of Table 1' if . . . (4) [a] finished good contains any composite wood product which

does not comply with emission standards in Table 1 . . . . " It is also supported by the remedial,

legislative purpose of the ATCM, which is "to reduce formaldehyde emissions from composite

wood products, and finished goods that contain composite wood products . . . . " § 93120(b).

Here, "finished goods" consist of "medium density fiberboard"—a "composite wood product"—

with a photographic image of a particular wood grain laminated to its top surface. Mot. at 1-2. It

therefore consists almost entirely of a "composite wood product." Were the sellers of "finished

goods" containing non-compliant composite wood products excluded from the prohibition in Section 93120.2(a), the ATCM's purpose would be substantially frustrated.

Defendant argues that extending Section 93120.2(a) to retailers such as Lumber Liquidators—which sells only "finished goods" and not "composite wood products" separate and apart from "finished goods"—improperly imposes "strict liability" and is inconsistent with Section 93120.8, which it refers to as ATCM's "safe harbor" for retailers. Def. Reply at 1-4. The Court must reject these contentions.

Section 93120.8 is titled "Requirements for Retailers that Sell, Supply, or Offer for Sale [Composite Wood Products][5] and Finished Goods Containing Those Materials." It has two pertinent operative subsections, (a) and (b). Subsection (a), titled "Emission Standards" states, in pertinent part, that " . . . all retailers must comply with the requirements of section 93120.2(a) [governing emission standards] for all composite wood products and finished goods containing these materials that are sold, supplied, offered for sale, or purchased for sale in California." Subsection (b), titled "Additional Requirements to Help Ensure that Complying Composite Wood Products and Finished Goods are Purchased" states, in pertinent part, as follows:

> Retailers must take reasonable prudent precautions to ensure that the composite wood products and composite wood products contained in finished goods that they purchase comply with the emission standards specified in subsection 93120(a). "Reasonable prudent precautions" include, at a minimum, instructing each supplier that the goods they supply to the retailer must comply with the applicable emission standards, and obtaining written documentation from each supplier that this is so . . .

> This section does not affect the liability of any person for any violation of section 93120.2(a).

Defendant's "safe harbor" theory, in effect, replaces the obligations under Section 93120.8(a) with the more limited, amorphous requirements set forth in Section 93120.8(b). That

---

[5] "Composite Wood Products" are defined by the ATCM as "Hardwood plywood, particleboard, and Medium Density Fiberboard." § 93120.1(8). *See supra.*

reading is contrary to the most natural reading of the ATCM, taken as a whole. More

specifically, defendant's reading fails to accommodate Section 93120.8(a) and the final sentence

of Section 93120.8(b) concerning a retailer's liability, which is no more "strict" with respect to

"finished goods" than it is with respect to a retailer of a "composite wood product" that it

purchases for consumer sales from a manufacturer or other person in the sales chain. It also

conflicts with the ATCM's careful definitions, which are crafted to regulate excessive

formaldehyde emissions from "composite wood products," however those products reach a

consumer (with some exceptions, such as through "new vehicles") and also to regulate all sellers

of "composite wood products," with or without a "photorealistic" image on its surface.

### 2.   Whether Plaintiffs Have Adequately Alleged Proper Testing to Establish a Violation of the ATCM

Lumber Liquidators also argues that even if it is a seller of "composite wood products"

for the purposes of Section 93120.2(a), plaintiffs fail to sufficiently allege that Lumber

Liquidators violated the ATCM by selling finished goods containing non-compliant composite

wood products. More specifically, Lumber Liquidators claims that plaintiffs have failed to

adequately allege compliance with the applicable testing requirements necessary to establish a

violation of Section 93120.2(a).

Under Section 93120.2(a)(4), a product "does not comply" with applicable emission

standards if "[a] finished good contains any composite wood product which does not comply

with the applicable emission standards in Table 1, based on the criteria set forth in . . . [Section

93120.2(a)(3)]." Section 93120.2(a)(3) in turn states that an emissions violation occurs if "a

composite wood product produced by a manufacturer is tested at any time after it is

manufactured, using either the compliance test method specified in section 93120.9(a) or the

enforcement test method specified in section 93120.9(b), and is found to exceed the applicable

emissions standard specified in Table 1." Plaintiffs' FAC alleges reliance on the Compliance

test method.

Under Section 93120.9(a), an emissions violation through the Compliance test method

"shall be demonstrated by conducting product emissions tests, *verified by third party*

*certification as specified in section 93120.4* . . . " (emphasis added).  Section 93120.1(41) defines

a "third party certifier" as follows:

> 'Third party certifier' means an organization or entity approved by the [ARB]
> Executive Officer that: (A) verifies the accuracy of the emission test procedures
> and facilities used by manufacturers to conduct formaldehyde emission tests, (B)
> monitors manufacturer quality assurance programs, and (C) provides independent
> audits and inspections.

Section 93120.4, titled "Third Party Certifiers," states that "[a]ll third party certifiers must be

approved in writing by the ARB . . . "

Defendant disputes that plaintiffs have alleged facts sufficient to establish that the

emissions test method on which they rely satisfies the ATCM's requirements for Compliance or

Enforcement testing.  Mot. at 6-7.  The Court has reviewed plaintiffs' detailed allegations

concerning the nature and extent of the product testing performed by "certified" laboratories and

concludes that those allegations, when viewed most favorably to plaintiffs, are sufficient to make

plausible the claim that their testing complied with applicable requirements for Compliance

testing.[6]  Whether plaintiffs can prove that a laboratory which conducted the relied-upon testing

was, in fact, a "third party certifier," and that its test methods complied with applicable

requirements, cannot be definitively determined at this time and must await adjudication on the

merits, if such adjudication becomes necessary.[7]

---

[6] *See* FAC ¶¶ 37, 43, 78, 88, 96, 125, 131, 140.
[7] Lumber Liquidators makes a number of other arguments concerning Compliance testing,
including that it pertains only to the manufacturing process itself and that under the
circumstances of these cases, plaintiffs must establish any alleged emissions violations

For the above reasons, the Court concludes that plaintiffs have alleged facts sufficient to establish that Lumber Liquidators sold Chinese-manufactured composite wood flooring in violation of the ATCM.

**B.      Whether Plaintiffs Have Sufficiently Alleged Violations of the California Consumer Protection Statutes**

Plaintiffs assert claims under three California statutes: the Unlawful, Unfair, or Fraudulent Business Practices Law ("UCL"), the False Advertising Law ("FAL"), and the Consumer Legal Remedies Act ("CLRA"). *See* FAC ¶¶ 165-93. Defendant moves to dismiss those claims on the grounds that the California plaintiffs have failed to allege, as required, facts sufficient to establish reliance on specific, actionable misrepresentations that caused injury and therefore lack Article III standing. Mot. at 9-13. Defendant also claims that to the extent an actionable misrepresentation is *not* required to establish liability under the UCL's "unlawful" prong, plaintiffs have failed to state such a claim based on the ATCM for the reasons discussed in Section III(A), *supra*. Mot. at 18.

**1.      UCL Claim**

The California UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. It requires that a plaintiff's economic injury come "as a result of" the allegedly unfair competition. *Id.* § 17204. California courts have concluded that the UCL imposes an "actual reliance" requirement on private citizens prosecuting a claim under the "unfair" and "fraud" prongs of the UCL, and also under the "unlawful" prong to the extent that the substance of the unlawful conduct is a misrepresentation claim. *Hale v. Sharp Healthcare*, 183 Cal. App. 4th

---

exclusively through the Enforcement test method. The Court has considered these positions and finds them without merit.

1373, 1385 (Cal. App. 4th 2010) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 327-28 (Cal. 2009)). *See also Mazza v. Am. Honda Motors Corp.*, 666 F.3d 581, 591 (9th Cir. 2012) (stating that "California . . . requires named class plaintiffs to demonstrate reliance" under the UCL, FAL, and CLRA).

In short, defendant moves to dismiss the UCL claim on the grounds that the California plaintiffs failed to state a claim because they have not alleged with sufficient particularity the specific representations on which they relied, why those specific representations were false, and the manner in which their reliance on such representations caused them injury. *See, e.g.*, Mot. at 13-17. Defendant also appears to contend that to the extent that plaintiffs attempt to state a UCL claim for violation of the ATCM without reliance on any particular representations, they have failed to adequately allege a violation of the ATCM for the purposes of establishing liability under the UCL's "unlawful" prong. Mot. at 18-19.

In assessing defendant's grounds for dismissal, the Court has considered pronouncements by California courts, including the Supreme Court of California and California federal district courts. In that regard, the Supreme Court of California has summarized the UCL's reliance and causation requirements as follows:

> While a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the only cause . . . a presumption . . . of reliance arises wherever there is a showing that a misrepresentation was material. A misrepresentation is judged to be "material" if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question . . . .'

*Tobacco II*, 46 Cal. 4th at 326-27 (internal citations omitted). A California federal court has recently concluded that "a plaintiff need not demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement." *Gold v. Lumber Liquidators, Inc.*, 2015 WL 7888906, at *15 (N.D. Cal. November 30, 2015), which also concluded that in the view of

the Ninth Circuit, as stated in *Stearns v. Ticketmaster Corp.*, (655 F.3d 1013, 1021 n.13 (9th Cir.

2011)), the UCL has arguably created a "conclusive presumption that when a defendant puts out

tainted bait and a person sees it and bites, the defendant has caused an injury . . . . "

   The FAC alleges that the California plaintiffs saw defendant's allegedly false

representations on its website, in its advertisements, and on its warranty labels.  FAC ¶¶ 72, 73,

83 (stating that plaintiffs "viewed Lumber Liquidators' website and saw the representations

Lumber Liquidators made regarding the safety and compliance of its products").  These plaintiffs

also allege that they relied on those representations and warranties in purchasing the Products.

*Id.* ¶¶ 74, 84, 94, 173.  Plaintiffs further allege that but for defendant's allegedly false

representations and warranties, they would not have purchased the Products.  *Id.* ¶¶ 79, 89, 90,

99.  Defendant claims that the FAC is inadequate because plaintiffs fail to allege with respect to

Lumber Liquidators' representations on its website "which representations each viewed and

which each thought was material . . . . " Mot. at 13.  But a plaintiff is not required to demonstrate

"individualized reliance" on specific misrepresentations and warranties.  *See Opperman v. Path,*

*Inc.*, 84 F. Supp. 3d 962, 978 (N.D. Cal. 2015).  Based on all the allegations in the FAC, the

Court concludes that the California plaintiffs have alleged facts sufficient to grant them Article

III standing, and to make their claims of reliance and causation plausible under the UCL.

   Defendant also claims that the California "[p]laintiffs do not allege that what Lumber

Liquidators *actually* said is false or misleading . . . . " Mot. at 15 (emphasis in original).

However, the UCL and the FAL—both provisions of California's Business & Professions

Code—"prohibit not only advertising which is false, but advertising which, *although true, is*

*either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse*

the public." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (Cal. 2002) (emphasis added and internal

alterations omitted); *see also Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (Cal. Ct. App. 4th 2013). The California Supreme Court has also recognized that any violation of the False Advertising Law is necessarily a violation of the UCL. *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (Cal. 1983). Therefore, "to state a claim under either the UCL or the [FAL], it is necessary only to show that members of the public are likely to be deceived." *Chapman*, 220 Cal. App. 4th at 871. Based on the detailed allegations of the FAC, including the specific representations alleged with respect to Lumber Liquidators' website,[8] the Court concludes that the California plaintiffs have alleged facts that make plausible their claims that Lumber Liquidators made representations that have a "likelihood or tendency to deceive or confuse the public." *Kasky*, 27 Cal. 4th at 951.

For the above reasons, the Court concludes that the California plaintiffs have alleged facts that make plausible their claims under the UCL based on alleged misrepresentations. Finally, given the Court's ruling that plaintiffs have adequately alleged a violation of the ATCM's emission standards, the Court also concludes that plaintiffs have adequately alleged a violation of the "unlawful" prong of the UCL, separate and apart from any alleged misrepresentations.

---

[8] Lumber Liquidators concedes that it states on its website that it "(i) purchases from mills that have been certified by a third-party certifier; (ii) requires its vendors to comply with the ATCM; and (iii) regularly selects finished goods for testing." Mot at 15. Based on those representations, defendant claims that the California plaintiffs' allegations are inadequate because (i) "Plaintiffs do not allege that the mills that Lumber Liquidators purchased from have *not* been third-party certified by a third-party certifier; (ii) Plaintiffs do not allege that Lumber Liquidators does not *"require"* its vendors to comply with CARB regulations; (iii) Plaintiffs do not allege that Lumber Liquidators does not regularly test finished products." *Id.* (emphasis in original) (internal citations omitted). Defendant also contends that its CARB label is not misleading because Lumber Liquidators did not affix the label.

### 2.    CLRA Claim

Similar to the UCL, California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Such practices include "[r]epresenting that goods are of a particular standard, quality, or grade . . . if they are of another." Cal. Civ. Code § 1770(a). The California plaintiffs' theory under the CLRA therefore is that Lumber Liquidators represented that its Chinese-manufactured laminate flooring was compliant with the relevant CARB emission standards when in fact it was not. FAC ¶¶ 183-93.

The requirements of the CLRA claim are similar to those of a UCL claim and for the reasons discussed above, the Court concludes that the California plaintiffs have adequately alleged reliance on material misrepresentations that caused them to purchase the Products. Therefore, the California plaintiffs have adequately alleged a CLRA claim as well.

### 3.    FAL Claim

The False Advertising Law makes unlawful any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. As with the UCL, it prohibits "advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky*, 27 Cal. 4th at 951 (internal quotations and alterations omitted). And as with a CLRA claim, California courts have held that "FAL plaintiffs may avail themselves of the inferred reliance principle where the misrepresentation is 'material.'" *True v. Am. Honda Motor Co., Inc.*, 520 F. Supp. 2d 1175, 1182 (C.D. Cal. 2007) (quoting *McAdams v. Monier, Inc.*, 60 Cal. Rptr. 3d 111, 121-22 (Cal. Ct. App. 3d 2007)). Therefore, under the FAL, "a plaintiff satisfies the reliance element with an allegation that a false or deceptive advertisement 'induced the plaintiff to alter his position to his detriment.'" *True*, 520 F. Supp. 2d at 1183 (citing *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668 (Cal. Ct. App. 4th

1993)).  Other federal courts have adopted this position as well.  *See, e.g., In re Milo's Dog Treats Consol. Cases*, 9 F. Supp. 3d 523, 534 (W.D. Pa. 2014) (stating that with regard to a claim under, *inter alia*, the California FAL, "A misrepresentation of fact is material if it induced the plaintiff to alter his position to his detriment.  Stated in terms of reliance, materiality means that without the misrepresentation, the plaintiff would not have acted as he did.").  For the reasons mentioned above, the California plaintiffs have adequately alleged facts that make plausible their claims that they materially relied on defendant's allegedly false representations and have therefore stated a cognizable claim under the FAL.

C.     **Whether the FAC has Adequately Alleged Violations of Other Consumer Protection Laws**

The claims asserted by the New York, Florida, Texas, and Illinois plaintiffs all contain essentially the same elements as those asserted under the California UCL, CLRA, and FAL, and the Court concludes at this preliminary pleading stage that, for essentially the reasons stated above, the other plaintiffs have alleged facts sufficient to make plausible their claims under their respective state consumer protection laws.

D.     **Whether the FAC has Adequately Alleged Claims Common to All Plaintiffs**

Plaintiffs assert a number of additional claims common to all plaintiffs, including fraudulent concealment (Count I) (FAC ¶¶ 156-64); breach of implied warranty (Count IX) (*id.* ¶¶ 239-47); violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (Count X) (*id.* ¶¶ 248-58); negligent misrepresentation (Count XI) (*id.* ¶¶ 259-62); and for declaratory relief (Count XII) (*id.* ¶¶ 266-68).

1.     **Fraudulent Concealment and Negligent Misrepresentation (Counts I and XI)**

Defendant's challenge to plaintiffs' claims for fraudulent concealment and negligent misrepresentation essentially reduces to the adequacy of the FAC with respect to the same issues

18

discussed in Section III(A), *supra*: defendant's alleged violation of the ATCM, defendant's alleged misrepresentations and duty to disclose, and plaintiffs' reliance on alleged misrepresentations. Mot. at 19-23. Defendant also argues that plaintiffs' claims are barred by the economic loss doctrine under applicable state law. For the reasons previously stated, the FAC adequately alleges facts that make plaintiffs' claims plausible with respect to defendant's violation of the ATCM, its misrepresentations, and its duty to disclose. The Court now turns to the economic loss doctrine.

As a general proposition, the economic loss rule bars, in certain circumstances, the recovery of damages in tort in the absence of personal injury or physical damage to property other than that purchased. *See Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 272-73 (Cal. 2004). Courts have specifically considered whether the economic loss rule applies to tort claims involving misrepresentations and have reached different conclusions. The Court has reviewed the FAC in light of the economic loss rule as that doctrine has been recognized in California, New York, Illinois, Florida, and Texas—the five states whose laws apply to the FAC plaintiffs. Upon that review, the Court concludes the following:

1. California, New York, Illinois, and Texas courts would apply the economic loss rule to claims for negligent misrepresentation but not to claims for fraudulent concealment.[9]

2. Florida courts would not apply the economic loss rule to either claims for negligent misrepresentation or to claims for fraudulent concealment.[10]

---

[9] *See Robinson*, 102 P.3d at 275; *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 451-52 (Ill. 1982); *Elkind v. Revlon Consumer Prods. Corp.*, 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015); *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors*, 960 S.W.2d 41, 43 (Tex. 1998); *Matlock Place Apartments, L.P. v. Druce*, 369 S.W.3d 355, 377-78 (Tex. Ct. App. 2012); *LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234, 236 (Tex. 2014).

Based on this assessment, the Court concludes the following with respect to the FAC:

1. The FAC states a claim for fraudulent concealment as to all plaintiffs;

2. The FAC states a claim for negligent misrepresentation as to the Florida plaintiffs, Ryan and Kristin Brandt; and

3. The FAC fails to state a claim for negligent misrepresentation as to the California, New York, Illinois, and Texas plaintiffs.

### 2.     Breach of the Magnuson-Moss Warranty Act (Count X)

The Magnuson-Moss Warranty Act ("MMWA") provides a federal cause of action for state law express and implied warranty claims. *See, e.g., Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 291-92 (4th Cir. 1989). Defendant moves to dismiss this claim on the grounds that plaintiffs fail to allege, as required, a breach of a "written warranty," as defined in 15 U.S.C. § 2301(6)(A), or an implied warranty, including specifically the elements of notice, reliance, and breach.

Under Section 2301(6)(A), a "written warranty" is "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." An "implied warranty" means "an implied warranty arising under state law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). The FAC alleges that "the warranty that came with the products" states, *inter alia*, that the Products comply "with all applicable laws, codes, and regulations . . . . " FAC ¶¶ 47, 252.[11]

---

[10] *See Tiara Condo Ass'n v. Marsh & McLennan Co.*, 110 So.3d 399, 406 (Fla. 2013).

[11] Defendant argues that the "warranty" relied upon did not "come with the product" but was part of what was represented in purchase orders as between defendant and its own suppliers. Mot. at

Viewing these allegations—together with all reasonable inferences—most favorably to the plaintiffs, the Court concludes that the FAC adequately alleges, for the purposes of surviving a motion to dismiss, a warranty that meets the definition of a "written warranty" and an "implied warranty" under the MMWA.

The pleading requirements with respect to the elements of applicable state law breach of warranty claims that serve as the predicate for the MMWA claims must be read in light of the MMWA's own substantive provisions. In that regard, under Section 2310(e) of the MMWA, notice to a seller, such as Lumber Liquidators, is not required until such a time as the Court determines the representative capacity of the plaintiffs pursuant to Fed. R. Civ. P. 23. In any event, the FAC alleges facts sufficient to make plausible their claims that defendant had the required notice of the relied upon defects in the Products that plaintiffs purchased, either by some of the plaintiffs themselves, or through news reports, regulatory investigations, or other investigative reports. *See* FAC ¶¶ 49, 55, 59, 95, 110, 135.

With regard to reliance, Section 2301(6)(B) of the MMWA states that the "written warranty" at issue need only provide a "basis for the bargain" in order for reliance to be established. Here, the FAC claims in detail how the alleged warranty provided a basis for the bargain by which plaintiffs purchased the Products. At this point, the FAC need not allege reliance with greater specificity, although there are more express allegations of reliance. *See* Section III(b)(1) *supra*. As to the breach element, the Court's conclusions as to the adequacy of the FAC with respect to the alleged violation of the ATCM dispose of defendant's claim that the

---

9, 25-27. At this stage, the Court must accept as true the allegations in the FAC and view them in the light most favorable to the plaintiffs. If necessary, the Court shall be in a position to better assess these allegations on a more complete record.

FAC fails to allege a state law breach of warranty claim because it does not adequately allege a violation of the ATCM.

Finally, defendant argues that the FAC does not name 100 individual plaintiffs and is therefore barred under the Section 2310(d)(3)(C) of the MMWA. However, courts that have considered this issue have concluded that a court's jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA") provides a basis for subject matter jurisdiction in addition to the MMWA. *See Chavis v. Fid. Warranty Servs. Inc.*, 415 F. Supp. 2d 620, 626 (D. S.C. 2006) (noting that in order to reconcile the jurisdictional requirements of the MMWA with CAFA, CAFA "provides an alternate basis by which federal courts may become courts of competent jurisdiction under [the MMWA]") (internal quotations omitted); *See also Birdsong v. Apple, Inc.*, 590 F.3d 955, 957 n.1 (9th Cir. 2009) (finding that plaintiffs' MMWA claim properly lied with the federal district court pursuant to CAFA). The Court likewise concludes that it has jurisdiction under the CAFA to adjudicate plaintiffs' MMWA claims; and for the foregoing reasons, plaintiffs have stated a claim for relief under the MMWA.

### 3. Implied Warranty

Defendant also challenges plaintiffs' claims for breach of the implied warranty of merchantability (FAC ¶¶ 239-247) under each applicable state's codification of U.C.C. Section 2-314, principally on the grounds that the FAC fails to adequately allege either notice to defendant as required by U.C.C. Section 2-607(3)(a) or that the Products are not "merchantable."[12] The Court has examined plaintiffs' implied warranty claim, defendant's defenses, and the applicable law, as adopted in each of the FAC plaintiffs' respective home states

---

[12] Defendant's final defense is that insofar as plaintiffs' claim is predicated upon the warranty stated on the CARB label, it must fail as plaintiffs have not alleged a violation of the ATCM. *See* Mot. at 24. Because the Court has concluded that plaintiffs have stated a claim for violation of the ATCM, this defense is rejected.

and concludes that plaintiffs have adequately stated a claim for breach of the implied warranty of

merchantability as contemplated by U.C.C. Section 2-314 and each state's codification of such.

U.C.C. Section 2-607(3)(b) requires that "where a tender has been accepted . . . a buyer

must within a reasonable amount of time after he discovers . . . any breach notify the seller of

breach or be barred from any remedy . . . " However, the purpose of Section 2-607(3)(b)'s

notice requirement is to "defeat commercial bad faith, not to deprive a good faith consumer of

his remedy." *See* U.C.C. § 2-607 cmt. 4. Official Comment 4 states that "the content of the

notification need merely be sufficient to let the seller know that the transaction is . . .

troublesome and must be watched . . . and thus opens the way for normal settlement through

negotiation." Courts have typically construed this notice requirement liberally, and regarded the

sufficiency and reasonableness of notice as a question of fact for the jury.[13] The Court has found

no reason to treat this issue differently under the applicable state laws pertaining to plaintiffs'

claims. Here, the FAC alleges in detail the chronology of events that resulted in plaintiffs'

learning of the Products' alleged defects, defendant's knowledge of those alleged defects, and

the notice that defendant received, either from some plaintiffs directly, or through others sources.

---

[13] *Elkind v. Revlon Consumer Prods. Corp.*, 2015 WL 2344134, at *14 (E.D.N.Y. May 14, 2015) (stating that under both New York UCC Section 2-607 and California Commercial Code Section 2607, "the sufficiency and timeliness of the notice is generally a question for the jury."); *TJ Stevenson & Co., Inc. v. 81, 193 Bags of Flour*, 629 F.2d 338, 339 (5th Cir. 1980) ("In Illinois, it is well-established that 2-607(3)(a)'s requirement of notification of breach of warranty need not be in any particular words and is ordinarily a question of fact, looking to all the circumstances of the case."); *Hubbard v. Gen. Motors Corp.*, 1996 WL 274018, at *4 (S.D.N.Y. May 22, 1996) ("While notice is a requirement under New York law for a breach of warranty claim, the sufficiency and timeliness of the notice is generally a question for the jury.") (internal citations omitted); *Bakhico Co., Ltd. v. Shasta Beverages, Inc.*, 1998 WL 25572, at *5 (N.D. Tex. Jan. 15, 1998) (concluding that under the Texas Uniform Commercial Code, "[n]otification need not be in any particular words, and timeliness is ordinarily a question of fact to be determined from all the circumstances of the case"); *Royal Typewriter Co. a Div. of Litton Bus. Sys. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1102 (11th Cir. 1983) ("Where the buyer gives some notice of breach, the issues of timeliness and sufficiency are questions of fact.").

Based on all of these allegations, viewed most favorably to the plaintiffs, the Court concludes that plaintiffs have sufficiently alleged notice to defendant. *See* FAC ¶¶ 95, 110, 135.

Finally, with respect to the issue of merchantability, under the U.C.C., plaintiffs are required to sufficiently allege that the Products are not "fit for the ordinary purpose for which the goods are used." U.C.C. § 2-314(2)(c). Again viewing the FAC's allegations most favorably to the plaintiffs, the Court concludes that the FAC has alleged facts sufficient to make plausible plaintiffs' claims that the Products were un-merchantable. The FAC includes specific allegations that the Products exceeded safe levels of formaldehyde emissions, were "hazardous," presented "dangers inherent in their products," and were "unsafe for use in a home." *See* FAC ¶¶ 15, 63, 67, 96, 109, 125, 140. For these reasons, the Court finds that plaintiffs have adequately stated a claim for breach of the implied warranty of merchantability.

### E.    Whether Plaintiffs Have Alleged a Cognizable Class Under Fed. R. Civ. P. 26(b)(2)

In the FAC, plaintiffs seek to certify class actions pursuant to Fed. R. Civ. P. 26(b)(2) and (b)(3). FAC ¶¶ 145, 155. Defendant moves to strike plaintiffs' putative classes under Rule 23(b)(2) based primarily on the Supreme Court's holding in *Wal-Mart Stores, Inc. v. Dukes*, in which it held that claims for monetary relief may not be certified where such relief is "not incidental to the injunctive or declaratory relief." 131 S. Ct. 2541, 2557 (2011); Mot. at 29-30. Plaintiffs oppose that motion principally on the grounds that because defendant is continuing to mislead plaintiffs and the putative class members regarding the risky formaldehyde levels in the Products by continuing to issue do-it-yourself home testing kits, their claims for monetary relief are incidental to their request for injunctive or declaratory relief. In other words, plaintiffs claim that defendant is "act[ing] . . . on grounds that apply generally to the class, so that final injunctive

24

relief or corresponding declaratory relief is appropriate." Fed. R. Civ. P. 26(b)(2); Pl. Opp. at 29-30.

Under the *Dukes* decision, class certification under Rule 23(b)(2) is inappropriate "when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 131 S. Ct. at 2558. Because this case necessarily contemplates individualized awards of monetary damages in the form of lost purchase prices, reimbursement for installation costs, etc., it would appear to be the type of case in which *Dukes* cautions against Rule 23(b)(2) certification. Nevertheless, the Court concludes that a definitive ruling on this issue is premature and will defer ruling until it takes up plaintiffs' affirmative motion to certify this case as a class action, not only under Rule 23(b)(2) but also under Rule 23(b)(3).

F.    **Plaintiffs' Claims for Declaratory and Injunctive Relief**

Finally, defendant moves to dismiss plaintiffs' claim for declaratory and injunctive relief. The Court has reviewed the FAC with respect to these claims and concludes that the FAC, when viewed most favorably to plaintiffs, alleges facts sufficient to make plausible their claims for some type of declaratory and injunctive relief, which is statutorily authorized with respect to certain claims. However, the Court finds, as with plaintiffs' class certification allegations, that it is premature to definitively rule on whether such extraordinary relief is ultimately available, and will accordingly defer such a ruling at this time.

### IV. CONCLUSION

Upon consideration of defendant Lumber Liquidators' Motion to Dismiss First Amended Representative Class Action Complaint and to Strike Plaintiffs' Request for Injunctive Relief Classes [Doc. No. 597], the memoranda of law in support thereof and in opposition thereto, the

argument of counsel at the hearing held on December 1, 2015, and for the reasons stated herein, it is hereby

ORDERED that the Motion be, and the same hereby is, GRANTED in part, DEFERRED in part, and DENIED in part.  The Motion is GRANTED to the extent of the claims for negligent misrepresentation in Count IX filed on behalf of all plaintiffs other than plaintiffs Ryan and Kristin Brandt, and those claims are accordingly DISMISSED.  The Motion is DEFERRED with respect to plaintiffs' class action allegations; and in all other respects, the Motion is DENIED.

The Clerk is directed to forward copies of this Order to all counsel of record.

_____/s/_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
December 11, 2015